**Leszek HUGHES, a.k.a. Thomas Lloyd Hughes, a.k.a. Tom, Petitioner,**

v.

**John ASHCROFT,\* Attorney General, Respondent.**

**No. 99–70565.**

United States Court of Appeals, Ninth Circuit.

Submitted April 17, 2001\*\*

Filed June 22, 2001

---

\* John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General, United States Department of Justice. Fed. R.App. P. 43(c)(2).

\*\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Jesse A. Moorman, Los Angeles, California, for the petitioner.

Terri J. Scadron, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

Before: PREGERSON, FERNANDEZ, and GRABER, Circuit Judges.

Opinion by Judge GRABER: Partial Concurrence and Partial Dissent by Judge FERNANDEZ.

GRABER, Circuit Judge:

Petitioner Hughes challenges a final order of removal issued by the Board of Immigration Appeals (BIA) on April 9, 1999. The BIA held that Hughes was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he was an alien who had been convicted of an aggravated felony. On appeal, he argues that he is a "national of the United States" or a "citizen" and thus is not an alien subject to removal proceedings. We disagree and, for that reason, dismiss the petition.

## JURISDICTION

■ We begin with the proposition that, in general, we lack jurisdiction to review a final order of removal of this kind. Title 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section ... 1227(a)(2)(A)(iii)." It is undisputed that Petitioner committed such an offense and that the commission of the offense is the reason why he was found to be removable. *See Miranda v. Reno,* 238 F.3d 1156, 1159 (9th Cir.2001) (holding that the court lacked jurisdiction of a similar removal order), *petition for cert. filed,* 69

U.S.L.W. 3740 (U.S. May 8, 2001) (No. 00–1693).

■ Nevertheless, we do have jurisdiction to review Petitioner's claim that he is a United States national or citizen and thus is not "an alien" subject to removal. *Scales v. INS*, 232 F.3d 1159, 1161 (9th Cir.2000). Title 8 U.S.C. § 1252(b)(5)(A) requires the court of appeals to decide the issue "[i]f the petitioner claims to be a national of the United States" and the facts—as here—are not in dispute. *See also Briseno v. INS*, 192 F.3d 1320, 1323 n. 4 (9th Cir.1999) (acknowledging that a petitioner's status as an alien is a "jurisdictional fact"); *Bowrin v. INS*, 194 F.3d 483, 486 (4th Cir.1999) (holding that the court of appeals had jurisdiction to determine the "jurisdictional fact" of whether the petitioner was an alien).

## FACTUAL AND PROCEDURAL HISTORY

Petitioner was born in Poland in 1956. He became an orphan and was adopted by two United States citizens in May of 1960. In October of 1960, Petitioner was admitted into the United States as an immigrant. His parents did not have him naturalized, and Petitioner does not contend (nor does the record reflect) that he ever initiated naturalization proceedings on his own.

In 1985, when he was 28 years old, Petitioner was convicted in California state court of felonies stemming from his repeated sexual abuse of a minor. He was sentenced to 24 years' imprisonment but was paroled in 1997 after having served 12 years of his sentence.

Shortly after his release from prison, in December of 1997, Petitioner was placed in removal proceedings. On February 10, 1998, an immigration judge (IJ) ordered Petitioner's removal. Petitioner, who had appeared pro se, waived the right to appeal, and the removal order became final.

In July of 1998, Petitioner, through a lawyer, filed a motion to reopen. The IJ denied the motion because it was untimely and because Petitioner presented no new, relevant evidence.

In August of 1998, Petitioner filed a "motion to reconsider" based on new evidence that the Polish government believed that Petitioner was a United States citizen. The IJ denied that motion as well.

Petitioner timely appealed to the BIA. The BIA dismissed the appeal on procedural grounds, without reaching the merits.

Petitioner timely filed this petition for review.

## STANDARD OF REVIEW

■ Under 8 U.S.C. § 1252(b)(5), we review a petitioner's claim to be a national of the United States to determine whether a genuine issue of material fact exists. If not, we must decide the claim. 8 U.S.C. § 1252(b)(5)(A).[1] We review de novo the legal questions involved in a claim that a person is a national of the United States. *Scales*, 232 F.3d at 1162.

## DISCUSSION

### A. *"National of the United States"*

Title 8 U.S.C. § 1101(a)(3) defines an alien as "any person not a citizen or national of the United States." In turn, 8 U.S.C. § 1101(a)(22) defines a "national of the United States" as "(A) a citizen of the

---

1. If we conclude that there is a genuine issue of material fact, we must transfer the case to the district court for a hearing. 8 U.S.C. § 1252(b)(5)(B). Neither party argues that there are disputed issues of material fact, and we find none in the record.

United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Only aliens are removable. 8 U.S.C. § 1227 (identifying classes of removable aliens). Thus, if Petitioner is either a "citizen . . . of the United States" or a "national of the United States," he is not removable.

Petitioner argues that he is a "national of the United States."[2] He reasons that the length of his residency in the United States, his lack of allegiance to Poland, his allegiance to the United States, and the fact that Poland does not consider him a citizen support his contention.

■ All circuits that have considered the question recognize that the category of noncitizen "national of the United States" is a constricted one, and they reject the argument that one can become a national through lengthy residency alone. *United States v. Sotelo*, 109 F.3d 1446, 1448 (9th Cir.1997); *Carreon–Hernandez v. Levi*, 543 F.2d 637, 638 (8th Cir.1976); *Oliver v. INS*, 517 F.2d 426 (2d Cir.1975). It appears that, to qualify as a national, a noncitizen resident of the United States must have applied for citizenship. *United States v. Morin*, 80 F.3d 124, 126 (4th Cir.1996); *Carreon–Hernandez*, 543 F.2d at 638.

The Ninth Circuit has not "definitively" settled on the meaning of the term "national" in the context of 8 U.S.C. § 1101. *Sotelo*, 109 F.3d at 1448. We have "suggested a person attains national status primarily through birth." *Id.* We also have acknowledged that the term historically referred to the noncitizen inhabitants of United States territories. *Id.* (quoting *Rabang v. INS*, 35 F.3d 1449 (9th Cir.1994)). Finally, we have rejected the argument

that a person who enters the United States illegally, lives in this country for a lengthy period, and maintains a subjective allegiance to the United States qualifies as a "national." *Id.* (Of course, here, Petitioner entered the United States legally, so *Sotelo* does not dispose of this case.)

The Second Circuit has addressed the question whether a person in a position similar to Petitioner's qualifies as a "national," and that court concluded that the answer is "no." *Oliver*, 517 F.2d at 427. In *Oliver*, the petitioner was born in Canada, lawfully entered the United States at the age of 10, and became a permanent resident. She lived in the United States for 20 years, married and had children with one United States citizen, divorced him, and married another United States citizen. After the petitioner was convicted of a narcotics offense, the INS sought to deport her. She argued that, because of her residency in the United States since childhood, she owed allegiance to the United States and was thus a "national." *Id.*

The Second Circuit rejected the petitioner's argument, reasoning that her allegiance was to Canada rather than to the United States, albeit by neglect rather than intention, because she had not opted to begin the naturalization process and thereby *officially* declare her allegiance to the United States. *Id.* at 427–28. The court further reasoned that, historically, the term "national" applied to an inhabitant of Unites States territories and that the primary way to become a "national" was through birth. *Id.*

In *Carreon–Hernandez*, the Eighth Circuit adopted the reasoning of *Oliver* and held that a permanent resident alien who entered the United States legally, lived in this country for 20 years, and during that

**2.** As we discuss below, we also asked the parties to address the question whether a new

statute operates to grant retroactive citizenship to Petitioner.

time married a citizen and fathered a son, did not qualify as a "national" because he had never begun the naturalization process. 543 F.2d at 638 (affirming and adopting the district court's opinion at 409 F.Supp. 1208 (D.Minn.1976)).

Using a similar analysis, the Fourth Circuit held that a native of Mexico who had applied for United States citizenship *was* a "national of the United States" for purposes of 18 U.S.C. § 2332, which prohibits the murder of United States nationals outside the United States. *Morin,* 80 F.3d at 126. The court reasoned that "an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself." *Id.*

■■■ Thus, it appears that, in order for a person who is born outside the United States to qualify for "national" status, the person must, at a minimum, demonstrate (1) birth in a United States territory or (2) an application for United States citizenship. Because Petitioner does not meet either of those minimal requirements, we need not delineate what additional facts (if any) he would have to show. He was not born in a United States territory, and at no time during his 40 years of residency in the United States did he attempt to apply for citizenship.

Petitioner argues that the fact that Poland does not consider him to be a citizen of Poland means that he is a national of the United States. That fact may be evidence of how Polish law treats questions of citizenship and nationality, but it can have no bearing on our interpretation of United States law on those topics. Even if this fact is viewed as evidence of Petitioner's lack of allegiance to Poland, it is not material because it fails to demonstrate an affirmative allegiance to the United States, as federal case law requires.

In summary, Petitioner has failed to demonstrate that he is a noncitizen "national of the United States" within the meaning of 8 U.S.C. § 1101.

### B. *The Child Citizenship Act of 2000*

Congress recently enacted the Child Citizenship Act of 2000, Pub. Law 106–395, 114 Stat. 1631 (Oct. 30, 2000) ("CCA"). We asked the parties to file supplemental briefs concerning the effect, if any, of the CCA on Petitioner's claim that he is not an alien.

■■■ We first explain why we decide this issue of law ourselves, instead of sending it to the BIA in the first instance. Generally, we review de novo the BIA's "determination of purely legal questions regarding the requirements of the Immigration and Nationality Act [ (INA) ]. The [BIA's] interpretation and application of the immigration laws are entitled to deference" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Coronado–Durazo v. INS,* 123 F.3d 1322, 1324 (9th Cir.1997) (citation omitted). However, deference is only "appropriate when a matter is consigned to the INS's discretion in the first place." *Id.* at 1324 n. 1. We concluded in *Coronado–Durazo* that we owed no deference to a BIA determination that solicitation to possess cocaine is a deportable offense, because "[t]he INS is not granted any discretion under § 241(a)(2)(B)(i) in deciding whether a particular crime is one relating to a controlled substance as it is, for example, when determining whether or not to grant an alien relief from deportation under a statutory standard." *Id.; see also Nehme v. INS,* 252 F.3d 415, 421 (5th Cir.2001) (holding that no *Chevron* deference is owed to the INS's interpretation of the INA in the course of the court's inquiry as to its own jurisdiction).

■ Here, the question is whether Congress has granted any discretion to the BIA to decide questions of law related to nationality. Based on the text of the statute and on our own precedent, we conclude that the answer is "no."

In the context of an order of removal, which is what Petitioner challenges in this case, the INA explicitly places the determination of nationality claims solely in the hands of the courts of appeals and (if there are questions of fact to resolve) the district courts:

> (A) Court determination if no issue of fact
>
> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court *shall* decide the nationality claim.
>
> (B) Transfer if issue of fact
>
> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.
>
> (C) Limitation on determination
>
> *The petitioner may have such nationality claim decided only as provided in this paragraph.*

8 U.S.C. § 1252(b)(5) (emphasis added); *see also* 8 U.S.C. § 1421(c) (providing that a person whose application for naturalization is denied may seek de novo review in a district court, which "shall make its own findings of fact and conclusions of law" and, at the petitioner's request, conduct a hearing de novo).

The review that we have conducted in past cases also illustrates that issues of law pertaining to nationality are for the court. In *Scales,* 232 F.3d at 1162–63, we reviewed de novo—and rejected—the BIA's interpretation of 8 U.S.C. § 1401, which establishes the qualifications for becoming either a national or a citizen of the United States at birth. In conducting de novo review, we also rejected the argument that we should defer to the State Department's interpretation of § 1401, on the ground that the State Department lacked expertise with respect to the nationality of a person within the United States. *Id.* at 1165–66.

We conclude, under the foregoing authorities, that the issue of law before us is one that we are obliged to resolve de novo. That being so, we turn to it now.

In Title I, the CCA revised the law concerning how children born outside the United States acquire United States citizenship. As amended, 8 U.S.C. § 1431(a) (§ 320(a) of the Immigration and Nationality Act) provides:

> A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
>
> (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
>
> (2) The child is under the age of eighteen years.
>
> (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

Under 8 U.S.C. § 1431(b), the foregoing criteria apply to a child who is adopted by a citizen parent, if the child satisfies the

requirements of 8 U.S.C. § 1101(b)(1). The "effective date" section in the CCA states that the amendments

shall take effect 120 days after the date of the enactment of this Act and *shall apply to individuals who satisfy the requirements of section 320 or 322 of the Immigration and Nationality Act, as in effect on such effective date.*

(Emphasis added.) The effective date of the CCA was February 27, 2001.

The dispute between the parties is what it means for an individual to "satisfy the requirements" of the CCA "as in effect on such effective date." Petitioner argues that he had fulfilled all the required conditions by February 27, 2001, because he was adopted by United States citizens, was lawfully admitted as a permanent resident while a young child, and was in the legal and physical custody of his parents then and for a period of several years afterwards. Respondent argues that a person can satisfy the requirements on February 27, 2001, only by being under the age of 18 (and meeting the other criteria) as of that date.

We are persuaded by Respondent's reading of the CCA, based on its text and context. At the same time that Congress enacted the provisions quoted above, it also enacted Title II, "Protections for Certain Aliens Voting Based on Reasonable Belief in Citizenship." Title II protects certain aliens who have either voted illegally or made false claims of citizenship. Under Title II, if an alien who permanently resided in the United States before the age of 16, and whose natural or adoptive parents were both United States citizens, reasonably believed at the time of the unlawful voting or false claim that he or she was a citizen, then the alien cannot be (1) found to be of "not good moral character," 8 U.S.C. § 1101(f) (as amended by § 201(a) of the CCA); (2) considered inad-

missible, 8 U.S.C. § 1182(a)(6)(C)(ii) & (a)(10)(D) (as amended by § 201(b) of the CCA); (3) considered deportable, 8 U.S.C. § 1227(a)(3)(D) & (a)(6) (as amended by § 201(c) of the CCA); or (4) subjected to criminal sanctions, 18 U.S.C. §§ 611 and 1015 (as amended by § 201(d) of the CCA), as a consequence of the unlawful voting or false claim.

In Title I, Congress repeatedly used the words "child" and "children" to describe those being granted automatic citizenship. By contrast, in Title II, Congress used the word "alien" to describe an adult who was receiving additional legal protection. Title I, which applies to "children," grants automatic citizenship. By contrast, with respect to adults who have resided permanently in the United States since they were children and who have voted or claimed citizenship under a reasonable (although mistaken) belief that they are citizens, Title II does *not* grant citizenship but relieves such aliens only from adverse consequences of having voted or made the false claim.

In the effective-date provision, Congress did not use either "children" or "aliens," but instead used the term "individuals" to describe those who can qualify for citizenship on the effective date of the CCA. But Congress also used the present tense of the verb "satisfy": The CCA "shall apply to individuals who satisfy the requirements ... on such effective date." In order to qualify, an individual must "satisfy the requirements" on February 27, 2001. And, as quoted above, one of those requirements is being a "child under the age of eighteen years."

We think that Congress' intention is clear from the text and context of the statute. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (explaining that, when

interpreting a statute, in the absence of ambiguity there is no need to resort to other aids to construction); *see also INS v. Pangilinan*, 486 U.S. 875, 883–84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) (stating that citizenship provisions must be strictly construed); *United States v. Ginsberg*, 243 U.S. 472, 474, 37 S.Ct. 422, 61 L.Ed. 853 (1917) (stating that the courts' duty is to enforce statutes granting political rights to aliens "rigidly"). Nonetheless, we also have examined the legislative history of the CCA and find nothing to detract from our conclusion. For example, Representative Lamar Smith, who introduced the bill, stated that it would amend the law "to confer United States citizenship automatically and retroactively on certain foreign-born *children* adopted by citizens of the United States." 146 Cong. Rec. H7774 (daily ed. Sept. 19, 2000) (emphasis added). He further explained that the CCA would apply both to newly adopted children and to "qualifying *children* who arrived in the United States prior to its enactment and have not yet obtained citizenship pursuant to the Immigration and Nationality Act (as it existed before enactment)." *Id.* (emphasis added). As in the text of the CCA, the emphasis was on children only.

Nor is that emphasis irrational. Congress could have decided, for example, that a person who already is an adult has an independent opportunity to apply for citizenship. On the other hand, children are in need of greater help and protection.

In short, the CCA granted automatic citizenship only to those children who were under the age of 18, and who met the other criteria, on February 27, 2001.[3]

3. In so holding, we reach the same conclusion as did the Fifth Circuit. *Nehme v. INS*, 252 F.3d 415, 430–32(5th Cir.2001).

## CONCLUSION

Because Petitioner was not born in a territory of the United States and did not apply for citizenship so as to demonstrate objectively an allegiance to the United States, he does not qualify as a noncitizen national of the United States. And, because Petitioner was over 40 years old when the CCA took effect, he is not entitled to automatic citizenship.

PETITION DISMISSED.

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in the proposed opinion, with the exception of part B. With respect to that part, I agree that the majority's construction of CCA § 104 is very plausible; indeed, it is rather persuasive to me.

However, the language of the CCA is not so clear that it will only bear the majority's construction. As I see it, the language could be construed to allow coverage of individuals who had reached the age of 18 years before the CCA's effective date. That being so, I think the wiser course would be to allow the BIA to render an opinion on the issue before we do so.

In my view, the fact that we review legal questions de novo does not detract from the fact that we owe *Chevron*[1] deference to the BIA. If we ever doubted that, the Supreme Court surely disabused us of the notion in 1999. *See INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25, 119 S.Ct. 1439, 1445–46, 143 L.Ed.2d 590 (1999). I am not satisfied that we may eschew that deference simply because the issues at hand touch on the question of nationality.

1. *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Certainly, we have not been cited to any cases to that effect.[2]

In fine, without denigrating the answer given by the majority, I would, instead, vacate the BIA's decision and remand the case for reconsideration in light of the CCA.

2. I do not find it significant that in one instance we did not give the Secretary of State any particular deference as to people within the United States. *See Scales v. INS*, 232 F.3d 1159, 1165–66 (9th Cir.2000). In that case, the statute conferred no authority regarding the subject upon the Secretary, and, in any event, the Secretary had not issued regulations to which we did owe deference. *Id.* We did not question the Secretary's authority in the proper arena.