**Joel Cordero TABUCBUC, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–72082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2003.

Decided Jan. 2, 2004.

Ronald T. Oldenburg, Esq., Waipahu, HI, for Petitioner.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Office of the District Counsel, Department of Homeland Security, Honolulu, HI, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA,

Ernesto H, Molina, Jr., Mary Jane Candaux, Esq., DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: BROWNING, REINHARDT, and THOMAS, Circuit Judges.

MEMORANDUM *

Joel Tabucbuc petitions for review of an order of removal entered by the Board of Immigration Appeals (BIA). Joel was convicted of violating Hawai'i's drug laws, incarcerated, and ordered removed as an alien convicted of a controlled substance aggravated felony. We hold that Joel Tabucbuc is a citizen of the United States and therefore GRANT the petition.

I

Joel Tabucbuc was born in the Philippines in 1969 to Emeterio and Simeona Tabucbuc, who were at that time citizens of the Philippines. Emeterio and Simeona were married in the Philippines in 1956. Joel is the youngest of Emeterio and Simeona's six children.

Emeterio remarried and immigrated to Hawai'i on September 17, 1968, as the spouse of a United States citizen. On October 23, 1970, the Family Court, First Circuit, of Hawai'i granted Emeterio a final decree of divorce from Simeona and awarded Simeona custody of the six Tabucbuc children. On July 6, 1977, Emeterio became a United States citizen through naturalization. Soon thereafter, he filed a petition to bring Joel to the United States as an immediate relative of a United States citizen. Simeona and Emeterio agreed that custody over Joel would be transferred to Emeterio and Simeona notarized a statement to that effect. Joel

was admitted to the United States on October 22, 1984, when he was fifteen, and joined his father in Hawai'i.

On January 6, 2000, Joel pled guilty to three counts of Promoting a Dangerous Drug in the Second Degree, in violation of Haw.Rev.Stat. §§ 712–1242(1)(c) & (b)(i). On April 17, 2001, the Immigration and Naturalization Service commenced proceedings against Joel, alleging that he was removable as an alien convicted of a controlled substance aggravated felony under Immigration and Naturalization Act (INA) §§ 237(a)(2)(A)(iii), (B)(i) & 101(a)(43)(B); 8 U.S.C. §§ 1227(a)(2)(A)(iii), (B)(I) & 1101(a)(42)(B). On January 25, 2002, an immigration judge ordered Joel removed to the Philippines and the BIA affirmed.

Joel filed the instant petition on July 11, 2002. Subsequently, Joel and his parents returned to the Family Court, First Circuit, of Hawai'i and obtained an Order After Hearing Plaintiff's Motion and Affidavit for Post–Decree Relief, dated November 20, 2002 ("Order"). The Order recognized that, under Hawai'i law, legal custody of Joel had passed to Emeterio "effective upon [Joel's] immigration to the United States." The Order also "amend[ed] the divorce previously granted nunc pro tunc to provide that legal custody of Joel Cordero Tabucbuc is granted to his father, Emeterio Tabucbuc, effective October 22, 1984."

II

■ This Court does not have jurisdiction to review the final removal order of an alien who is removable for having committed an aggravated felony contained in INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). 8 U.S.C. § 1252(a)(2)(C). However, where the peti-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

tioner claims that he is a United States citizen not subject to removal, we have jurisdiction to determine the petitioner's nationality claim under 8 U.S.C. § 1252(b)(5)(A). *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1064 (9th Cir.2003). If we determine that no genuine issue of material fact exists, then we must decide petitioner's nationality claim. 8 U.S.C. § 1252(b)(5)(A). If we conclude that a genuine issue of material fact pertaining to petitioner's nationality claim exists, then we must transfer the case to the district court where the petitioner resides for a new hearing on the nationality claim. 8 U.S.C. § 1252(b)(5)(B). In determining whether a genuine issue of material fact on a petitioner's nationality claim exists, "traditional summary judgment principles apply." *Chau v. INS*, 247 F.3d 1026, 1029 (9th Cir.2001).

We review *de novo* the legal questions involved in a petitioner's claim that he is a United States citizen. *Hughes v. Ashcroft*, 255 F.3d 752, 755 (9th Cir.2001); *Perdomo–Padilla v. Ashcroft*, 333 F.3d 964, 967 (9th Cir.2003). In reviewing questions of law relating to a petitioner's claim of United States citizenship, we are not required to give *Chevron* deference to agency interpretation of the INA. *Hughes*, 255 F.3d at 757–58. This is because "the INA explicitly places the determination of nationality claims solely in the hands of the courts of appeals and (if there are questions of fact to resolve) the district courts." *Id.* at 758.

## III

Citizenship for one not born in the United States may be acquired "only as provided by Acts of Congress." *Miller v. Al-*

*bright*, 523 U.S. 420, 424, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998). Joel's sole argument in this petition is that he is a citizen of the United States pursuant to former INA § 321(a), 8 U.S.C. § 1432(a), and is thus not subject to removal as a felon convicted of an aggravated offense. Former INA § 321(a) provided, in pertinent part, that:

> A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions:
>
> ...
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents ...; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of ... the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a).[1] Joel must prove that he meets (3), (4), and (5), and that these conditions were met prior to his eighteenth birthday. Joel meets condition (4), since his father, Emeterio, naturalized in 1977, when Joel was eight years old. Joel also meets condition (5) because he began to reside in the United States in 1984, when he was under the age of eighteen. We must therefore determine whether Joel was in the "legal custody" of his father within the meaning of former INA

---

1. The Child Citizenship Act of 2000(CCA), P.L. 106–395, repealed INA § 321 and amended INA § 320, 8 U.S.C. § 1431. This Court has held that "the CCA granted automatic citizenship only to those children who were under the age of 18, and who met the other criteria, on February 27, 2001." *Hughes*, 255 F.3d at 760. Neither party claims that the CCA applies to this case.

§ 321(a)(3), 8 U.S.C. § 1432(a)(3), when Joel immigrated to the United States in 1984.

The meaning of the term "legal custody" as contained in former INA § 321(a)(3) "is, of course, a question of federal statutory interpretation." *Fierro v. Reno*, 217 F.3d 1, 3–4 (1st Cir.2000). To determine whether Joel was in the legal custody of his father when he immigrated to the United States in 1984, we look presumptively to Hawai'i law. *See Adams v. Howerton*, 673 F.2d 1036, 1039 (9th Cir.1982) (looking presumptively to state law to determine whether petitioner was a "spouse" for purposes of 8 U.S.C. § 1151(b)(2)(A)(i)); *see also Fierro*, 217 F.3d at 6. The relevant question is whether a Hawai'i state court, acting in 1984, would have recognized Joel's father as having legal custody of Joel.

■ The Hawai'i Family Court Order establishes authoritatively that a Hawai'i court in 1984 would have determined that Joel was in the legal custody of his father. After reviewing the relevant facts, the Order states that Emeterio and Simeona's agreement to transfer legal custody "was within the purview of their authority" and that "it is not necessary for parents to come into court to change or amend a degree [sic] of divorce every time they may jointly make a major decision concerning the care and custody of their children." We decline to question a Hawai'i state court's interpretation of Hawai'i law. Because the Order accepts the agreement as genuine, gives the agreement full force and effect, and bases its determination that the father had legal custody on the agreement, the Order resolves the question presented here.

We note that the Hawai'i Court Order's interpretation of Hawai'i law is fully consistent with the primary objective of former INA § 321(a)(3), "the protection of parental rights." *See Barthelemy*, 329 F.3d at 1066; *Fierro*, 217 F.3d at 6. The Order recognizes that Joel's parents were in complete agreement that legal custody should transfer to Emeterio when Joel came to the United States. There was therefore no danger that one parent's desire that the child attain derivative citizenship would overcome the objections of the other parent.

The Government objects that giving credence to the Hawai'i Court Order would "in substance allow the state courts to create loopholes in the immigration laws on grounds of perceived equity or fairness," and that the Order cannot establish citizenship because former INA § 321(a) "clearly requires the naturalization of the parent having legal custody of the child ... while such child is under the age of eighteen years." (internal quotation marks omitted). These are not, however, sound objections to looking to the Order to determine whether, under Hawai'i law, "legal custody" transferred through the parental agreement itself. According weight to the Order does not create a loophole for state courts to manipulate federal immigration law, since this Court only looks to the Order for guidance in interpreting Joel's status under state law. According weight to the Order also does not violate the requirement that the conditions of former INA § 321(a) be satisfied before the beneficiary's eighteenth birthday, since we look to the Order to determine this very question.

Because the Hawai'i Court Order accepts Emeterio and Simeona's agreement as determinative with respect to the father's legal custody over Joel in 1984, there are no issues of material fact to resolve. Therefore, we hold that Joel met the requirements of former INA § 321(a) before he turned eighteen and thus became a derivative citizen of the United

States.[2] As a citizen of the United States, Joel is not subject to removal. Joel Tabucbuc's petition is GRANTED.

---

2. Because we can resolve this case based solely on the Order's statement of Hawai'i law, we do not address the effect of the Order's *nunc pro tunc* amendment of the Tabucbuc's custody decree.

