

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2004

# Lawal v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2354

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lawal v. Atty Gen USA" (2004). *2004 Decisions.* Paper 1033.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1033

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-2354

———

OLUKOLADE LAWAL,

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Nos. 00-cv-2264, 02-cv-0265)
District Judge: Honorable Richard P. Conaboy

———

Argued
January 15, 2004

Before: SLOVITER, RENDELL and ALDISERT, Circuit Judges.

(Filed February 3, 2004)

TODD R. GEREMIA, ESQ.[1] (Argued)
Jones Day
222 East 41st Street
New York, New York 10017-6702
    Attorney for Petitioner

PETER D. KEISLER, ESQ.
Assistant Attorney General, Civil Division
LINDA S. WERNERY, ESQ.
Senior Litigation Counsel
Office of Immigration Litigation
SUSAN C. LYNCH, ESQ. (Argued)
Attorney
U.S. Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
    Attorneys for Respondent

———

## OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

This appeal requires us to decide whether the district court erred in denying

Olukolade Lawal's three consolidated petitions for habeas corpus. Lawal contends that

the U.S. Immigration and Naturalization Service ("INS")[2] illegally held him in custody as

---

[1] The court is appreciative of the willingness of Mr. Geremia and his law firm, Jones Day, to undertake representation in this case on a pro bono basis.

[2] The INS is now known as the Bureau of Citizenship and Immigration Services within the Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 451, 116 Stat. 2135, 2195 (2002) (codified at 6 U.S.C. § 271 (Supp. 2003)). Because the operative events in this case took place before the name change, INS is used here.

a removable alien even though he had achieved derivative citizenship under either the Child Citizenship Act of 2000 ("CCA"), 8 U.S.C. § 1431, or the former Section 321 of the Immigration and Nationality Act, 8 U.S.C. § 1432 (1988) (repealed 2000). We will affirm.

## I.

Because we write exclusively for the benefit of the parties, who are familiar with the facts and the proceedings below, our discussion of the background will be limited. Lawal is a 30-year-old native of Nigeria who was admitted to the United States as a lawful permanent resident in 1987. Lawal moved to the United States to live with his father, who married a United States citizen in 1979 and was naturalized in 1989, and his stepmother. Lawal's parents were never married.

On December 15, 1997, Lawal was convicted in the state of New York for selling cocaine. As a result of this conviction, the INS initiated deportation proceedings. See 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(B). Lawal contends that he is not subject to removal notwithstanding the conviction because he is a citizen.

## II.

The district court construed Lawal's derivative citizenship arguments in the habeas petitions as an appeal from the August 9, 2001 final order of deportation by the Board of Immigration Appeals ("BIA"). Noting Lawal's 1997 New York conviction for the criminal sale of a controlled substance, the district court transferred Lawal's

challenge of the final order of deportation to us. <u>See</u> 8 U.S.C. § 1252(a)(2)(C) ("no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § 1227(a)(2)(A)(iii), (B)]"); <u>Valansi v. Ashcroft</u>, 278 F.3d 203, 207 (3d Cir. 2002).

We will not accept jurisdiction under the district court's transfer order. Under 28 U.S.C. § 1631, a court may transfer a case to "any other such court in which the action or appeal could have been brought at the time it was filed or noticed. . . ." None of Lawal's habeas petitions – dated December 26, 2000, April 10, 2001 and February 19, 2002 – was filed in the district court within 30 days of the BIA's final order of removal on August 9, 2001. <u>See</u> 8 USC § 1252(b)(1) (setting a 30-day deadline for petitions for review of final orders of removal). Accordingly, we hold that the transfer to us was inappropriate.

## III.

Assuming <u>arguendo</u> that it had jurisdiction to consider the habeas petitions even if it could not review the final order of removal, the district court denied Lawal's three consolidated habeas petitions. The district court properly exercised its jurisdiction to consider the consolidated petitions. <u>See</u> <u>Chmakov v. Blackman</u>, 266 F.3d 210, 213 (3d Cir. 2001) ("district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses").

We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a) to

review the district court's final order denying the petitions. "We exercise plenary review over the District Court's legal conclusions in a habeas proceeding. . . ." Werts v. Vaughn, 228 F.3d 178, 191 (3d Cir. 2000).

IV.

We agree with the district court that the CCA does not apply retroactively to grant derivative citizenship to Lawal. The CCA applies only to individuals born outside of the United States who satisfy several conditions, including a requirement that the individual be "under the age of eighteen years" on the statute's effective date, February 27, 2001. See 8 U.S.C. § 1431(a); Child Citizenship Act of 2000, Pub. L. No. 106-395, § 104, 114 Stat. 1631, 1633 (2000); Drakes v. Ashcroft, 323 F.3d 189, 191 (2d Cir. 2003); United States v. Arbelo, 288 F.3d 1262, 1263 (11th Cir. 2002); Hughes v. Ashcroft, 255 F.3d 752, 759-760 (9th Cir. 2001); Nehme v. INS, 252 F.3d 415, 431 (5th Cir. 2001). Lawal, who was born on December 30, 1973, was 27 years old on the day the CCA became effective. Accordingly, the CCA's automatic citizenship provisions do not apply to him.

V.

We now turn to Lawal's contention that he gained citizenship under the former Section 321 of the Immigration and Nationality Act by virtue of the naturalization of his father in 1989. The statute in effect at the time Lawal's father was naturalized provided in relevant part:

(a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:

5

. . . .
> (3) The naturalization of the parent having legal custody of
> the child when there has been a legal separation of the parents
> or the naturalization of the mother if the child was born out of
> wedlock and the paternity of the child has not been
> established by legitimation. . . .

8 U.S.C. § 1432 (1988) (repealed 2000).

As acknowledged by the district court, the immigration judge who initially determined that Lawal met the requirements for derivative citizenship noted that the former Section 321 left a gap for alien children born out of wedlock who sought to obtain citizenship by virtue of their father's naturalization. Lawal further contends that we should interpret the former Section 321 to avoid what he views as the constitutional problem posed by an unjustified gender-based classification.

Lawal recognizes, however, and we emphasize here, that Lawal has not asked us to declare the former Section 321 unconstitutional as a violation of the Equal Protection Clause. We further emphasize that Congress closed the gap in the former Section 321 and eliminated any suggestion of gender-based classification when it adopted the CCA. See 8 U.S.C. § 1431.

The district court held that Lawal did not satisfy the conditions for derivative citizenship in the former Section 321 because, even though Lawal was in the legal custody of his father at the time of his father's naturalization, Lawal's parents were never married and thus could not have undergone a "legal separation." Lawal urges us to adopt the view that Lawal's parents are legally separated precisely because they were never

6

married.  This argument, however, stretches the meaning of "legal separation" too far.

We start with "the language employed by Congress . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used."  INS v. Phinpathya, 464 U.S. 183, 189 (1984) (internal quotations and citations omitted).  It is clear to us that Congress intended the term "legal separation" in the former Section 321(a)(3) to presume the preexistence of a legally binding marriage.  In defining "legal separation," Black's Law Dictionary advises us to "[s]ee SEPARATION (1)."  Black's Law Dictionary 907 (7th ed. 1999).  "[S]eparation. 1." is described as "[a]n arrangement whereby a husband and wife live apart from each other while remaining married, either by mutual consent or by judicial decree[.]"  Id. at 1369.  See also Nehme, 252 F.3d at 426 ("in the United States, the term 'legal separation' is uniformly understood to mean *judicial* separation") (emphasis in original); Wedderburn v. INS, 215 F.3d 795, 799 (7th Cir. 2000) ("it is impossible to see how people who have never been joined can be separated").

If the term "legal separation" included situations in which there had been no marriage, the term would be superfluous.  See id. (noting that the unmarried parent of a child seeking citizenship was "'legally separated' from more than six billion people: everyone on the planet other than his wife").  The view urged on us by Lawal would "defy the axiom of statutory construction that whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage."  Acceptance Ins.

7

Co. v. Sloan, 263 F.3d 278, 283 (3d Cir. 2001) (internal quotations and citations omitted).

The district court also rejected Lawal's argument that he could have gained citizenship by virtue of his father's naturalization under the provision of the former Section 321(a)(3) covering "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." 8 U.S.C. § 1432(a)(3) (1988) (repealed 2000). On its face, this provision clearly does not include situations, such as that of Lawal, in which the naturalized custodial parent is the father rather than the mother. Still, Lawal contends that the provision's purported unjustified gender-based classification requires us to read the statute so as to grant derivative citizenship to Lawal. This we will not do.

Again, we emphasize that our task is not to determine the constitutionality of the former Section 321 in light of the Equal Protection Clause. We must determine only whether Congress, "[i]n the exercise of its broad power over naturalization and immigration," Mathews v. Diaz, 426 U.S. 67, 79-80 (1976); see also Miller v. Albright, 523 U.S. 420, 434 n.11 (1998), intended the former Section 321 to apply to someone in Lawal's situation. In reviewing the choices made by Congress in this area, we are mindful that "such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary." Mathews, 426 U.S. at 81.

The former Section 321 is based on the general requirement that for a child born

8

outside the United States to acquire citizenship, both parents must naturalize.  8 USC §

1432(a)(3) (1988) (repealed 2000).  In carving out certain limited exceptions to prevent

hardship and preserve the family unit, Congress did not permit either an unwed mother or

an unwed father alone to transmit citizenship to a legitimated child when the other parent

was still living.  It is true that the former Section 321 allows unwed mothers to transmit

citizenship to their children for whom paternity has not been legitimated but the statute

does not have a similar provision for unwed fathers.  This is "neither surprising nor

troublesome from a constitutional perspective" because "[f]athers and mothers are not

similarly situated with regard to the proof of biological parenthood."  Nguyen v. INS,

533 U.S. 53, 63 (2001).

Ultimately, we need not determine the level of scrutiny that would apply to a

review of the former Section 321's constitutionality in an equal protection case.  Nor do

we need to determine whether the distinction between unmarried mothers and unmarried

fathers in the former Section 321(a)(3) "is substantially related to important

governmental objectives."  Miller, 523 U.S. at 434 n.11 (discussing the gender

distinction in 8 U.S.C. § 1409, the out-of-wedlock children citizenship provision of the

Immigration and Nationality Act).  We are convinced that the canon of construction

urged on us by Lawal – that we must read the former Section 321 "to avoid serious

constitutional problems," Sandoval v. Reno, 166 F.3d 225, 237 (3d Cir. 1999) – does not

require us to turn the former Section 321 on its head.  By its terms, the statute does not

9

apply to Lawal.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. We conclude that the district court did not err in holding that Lawal did not gain derivative citizenship under either the CCA or the former Section 321(a)(3). Accordingly, the judgment of the district court denying Lawal's three consolidated habeas corpus petitions will be affirmed.

───

TO THE CLERK:

Please file the foregoing opinion.

    s/Ruggero J. Aldisert<br>
Circuit Judge

DATED:    February 3, 2004