Gilda Altagracia ABREU–REYES,
a.k.a. Gilda A. DeSmith,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 99–70542.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 2001.

Filed June 10, 2002.

Jesse A. Moorman (argued and on the briefs), Los Angeles, CA, for the petitioner.

Marion E. Guyton (argued), Nelda C. Reyna (on the briefs), Washington, DC, for the respondent.

Before O'SCANNLAIN and PAEZ, Circuit Judges, and KING,* District Judge.

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

**OPINION**

SAMUEL P. KING, District Judge.

Gilda Altagracia Abreu–Reyes a.k.a. Gilda Ada DeSmith ("Abreu–Reyes"), a native and citizen of the Dominican Republic, petitions for review of a decision of the Board of Immigration Appeals ("BIA") finding her removable. Abreu–Reyes was convicted of bribery concerning a program receiving federal funds and of subscribing to a false tax return. The Immigration and Naturalization Service ("INS") charged that Abreu–Reyes was subject to removal for having been convicted of an aggravated felony. We have jurisdiction pursuant to 8 U.S.C. § 1252(b).

## I. *FACTS*

Abreu–Reye has been a lawful permanent resident in the United States since 1971. In 1997, she plead guilty to three counts of a five-count indictment, was convicted, and a federal district court sentenced her to six months in prison for bribery concerning a program receiving federal funds in violation of 18 U.S.C. § 666, and subscribing to a false tax return in violation of 26 U.S.C. § 7206(1).

On May 27, 1998, the INS issued a Notice to Appear in removal proceedings. The Notice to Appear alleged that Abreu–Reyes had been admitted to the United States, but was removable for having been convicted of an aggravated felony as defined in § 101(a)(43)(M) of the INA, 8 U.S.C. § 1101(a)(43)(M). At the removal hearing, the Immigration Judge ("IJ") relied on the pre-sentence report prepared by the district court to find that Abreu–Reyes's conviction for subscribing to a false tax return was an aggravated felony as a fraud offense under § 101(a)(43)(M) of the INA. Although the record before the

IJ contained the judgment of Abreu–Reyes's conviction, the judgment itself did not indicate the amount of loss to the federal government. Abreu–Reyes's pre-sentence report was used to determine this critical fact because to constitute an aggravated felony, the loss to the victim must exceed $10,000. The IJ issued an order removing Abreu–Reyes.

On appeal to the BIA, Abreu–Reyes argued that the IJ erred in relying on the information in the pre-sentence report to establish the amount of loss. The BIA disagreed, however, and found that many different documents may constitute the record of conviction that an IJ may permissibly rely upon. The BIA stated that while it has not specifically held that a pre-sentence report is included in a record of conviction, § 240(c)(3)(B) of the INA, 8 U.S.C. § 1229a(c)(3)(B), allows for its inclusion.

Abreu–Reyes also argued that the pre-sentence report was hearsay. In response, the BIA noted that hearsay evidence is admissible in immigration proceedings if the evidence is probative and its use is fundamentally fair. Thus, the BIA found that the IJ properly admitted the pre-sentence report into the record.

Lastly, Abreu–Reyes argued that she was deprived of equal protection under the Fourteenth Amendment because of her ineligibility for removal relief. The BIA held that it lacked jurisdiction to rule upon the constitutionality of the INA and its regulations. This petition for review followed.

## II. DISCUSSION

### A. JURISDICTION

Under the permanent rules of the Illegal Immigration Reform and Immigrant Re-

sponsibility Act ("IIRIRA"), we must dismiss the alien's petition for lack of jurisdiction. Castro–Baez v. Reno, 217 F.3d 1057, 1058 (9th Cir.2000) (citing 8 U.S.C. § 1252(a)(2)(C)). Accordingly, if the BIA correctly concluded that Abreu–Reyes was convicted of an aggravated felony, we lack jurisdiction to review the removal decision. Park v. INS, 252 F.3d 1018, 1021 (9th Cir.2001). Nevertheless, we retain jurisdiction to determine our own jurisdiction. Id.

### B. THE PRE–SENTENCE REPORT

The first issue we must decide is whether the IJ erroneously relied upon the pre-sentence report to determine that Abreu–Reyes's fraud conviction caused a loss to the victim, the Internal Revenue Service ("IRS"), in excess of $10,000. If not, her conviction would fall into the "aggravated felony" category and render her removable. 8 U.S.C. §§ 1101(a)(43)(M)(i) and (ii).

We review de novo the threshold issue of whether a particular offence constitutes an "aggravated felony" for which an alien is deportable. Park, 252 F.3d at 1021. The BIA's determinations of purely legal issues are reviewed de novo, but are generally entitled to deference under Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); E.g., Hughes v. Ashcroft, 255 F.3d 752, 757 (9th Cir.2001).

The INA provides an extensive list of what may constitute proof of a criminal conviction. § 240(c)(3)(B). Significantly, § 240(c)(3)(B)(vi) provides that "[a]ny document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction" shall constitute proof of a criminal conviction.[1] When examining

---

1. 8 C.F.R. § 3.41 also provides: "In any proceeding before an Immigration Judge ... (d) Any other evidence that reasonably indicates

the existence of a criminal conviction may be admissible as evidence thereof." (emphasis added).

an alien's removability, courts refer to the record of conviction, which includes the indictment or information, plea, verdict or judgment, and sentence, to determine the nature of the underlying crime for which an alien was convicted. *See Goldeshtein v. INS,* 8 F.3d 645, 648 (9th Cir.1993) (examining alien's indictment to determine whether the resulting conviction involved moral turpitude); *Wadman v. INS,* 329 F.2d 812, 814 (9th Cir.1964).

We find that the pre-sentence report falls into the category of documents that constitute proof of the nature of the alien's criminal conviction. The pre-sentence report is a document prepared under the direction of the court in which the conviction is entered, and it indicates the existence of a conviction. In this case, the report was prepared under the direction of the federal district court by a probation officer after Abreu–Reyes pled guilty to two counts of subscribing to a false tax return. Although the judgment is proof of the conviction, the IJ necessarily relied upon the pre-sentence report for proof of the amount of loss to the victim because no other document in the record provided that information.

Abreu–Reyes asserts that it was improper to admit the pre-sentence report as part of the record of conviction because it is irrelevant and unreliable hearsay. The test for admissible hearsay in removal proceedings is whether (1) the hearsay statement is probative and (2) whether its admission is fundamentally fair. *See Baliza v. INS,* 709 F.2d 1231, 1233 (9th Cir. 1983). In addition, the INS must present "clear, unequivocal, and convincing" evidence to prove removability. *Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). The court examines "whether there is reasonable, substantial, and probative evidence in the record as a whole to support the BIA's decision that the INS" has met this burden. *Hernan-*

*dez–Robledo v. INS,* 777 F.2d 536, 539 (9th Cir.1985).

The report provided considerable detail with regard to Abreu–Reyes's crimes, including the loss to the victim as calculated by the IRS, which far exceeded $10,000. For example, paragraph forty-nine of the pre-sentence report states that "[a]ccording to the calculations of the IRS case agent, DeSmith owes $37,546 ($25,470 for 1992 and $12,076 for 1993) in taxes not paid" and that "this amount does not include penalties and interest." Paragraph fifty under the heading "Victim Impact" again states that "[a]s a result of the defendant's commission of the offense, the $37,546 is due in taxes owed to the IRS and that "[a]s indicated, this figure does not include interest and penalties.' "

Furthermore, Abreu–Reyes provided no evidence at the removal hearing or to the BIA that the amount of the loss to the IRS was less than $10,000. There is also no indication that pursuant to Federal Rules of Criminal Procedure 32(b)(6)(B) Abreu–Reyes communicated in writing any objections to any material information in the pre-sentence report.

The fact that Abreu–Reyes was sentenced to only six months does not show that the loss to the government was not in excess of $10,000. The pre-sentence report shows a Total Offense Level of twelve, which corresponds to a sentencing range of ten to sixteen months. However, the district judge could have sentenced Abreu–Reyes to six months, instead of ten to sixteen months, for a couple of reasons. For example, the district judge could have possibly considered paragraph 135 of the pre-sentence report, entitled "Impact of Plea Agreement," which states that "[p]ursuant to a written plea agreement, the defendant's total adjusted offense level would be 12 less two levels for acceptance of responsibility for a total offense level of

10, giving her a guideline sentencing range of 6 to 12 months."

Another valid reason for the six-month sentence could be that Abreu–Reyes served her term as a combination of a six-month sentence and community confinement or home detention with a supervised release. Paragraph 136 of the pre-sentence report, entitled "Supervised Release," explains that "[t]he sentencing factors to which the parties have stipulated place the defendant in Zone B of the Sentencing Table." A Zone B sentencing range means that Abreu–Reyes could have served "at least one month of imprisonment and the remainder of the term ... by community confinement or home detention ...." Paragraph 136 also states that Abreu–Reyes was "evaluated and found suitable for the electronic monitoring home detention program."

Additionally, paragraphs 138 and 139, entitled "Probation," explain that if the district judge finds the applicable sentencing range is in Zone B, then the "[m]inimum term may be satisfied by community confinement, intermittent confinement, or home detention as a condition of probation" and that the "minimum term in sentencing range is 1–6 months." Thus, the district judge could have sentenced Abreu–Reyes to just six months with a term of home detention because her applicable sentencing range fell under Zone B.

We do not know exactly how the district judge decided on a six-month sentence, but the pre-sentence report provides plausible alternatives as to how he could have arrived at that figure. Nothing in the pre-sentence report suggests that the six-month sentence somehow resulted from a finding that the loss to the government was not in excess of $10,000. Everything in the pre-sentence report indicates a higher loss.

There being no evidence to the contrary, we find that the IRS calculations in the pre-sentence report are relevant and reliable and, therefore, satisfy the probative prong of the admissible hearsay test. We further find that, as a whole, the report provided clear and convincing evidence that the loss to the victim was in excess of $10,000. The question then arises whether admitting this evidence was fundamentally unfair because of the confidential nature of pre-sentence reports.

■ While it is true that a pre-sentence report is a confidential document, disclosure of pre-sentence reports is warranted in some cases. Parties seeking access to a pre-sentence report must make a threshold showing that disclosure would serve the "ends of justice." *United States v. Schlette*, 842 F.2d 1574, 1581 (9th Cir.1988) (citing *Berry v. Dep't of Justice*, 733 F.2d 1343, 1352 (9th Cir.1984)). The court then balances the need for disclosure against the reasons for confidentiality on a case-by-case basis. *Id.* The issue here is whether the IJ's use of the pre-sentence report for this limited purpose was proper.

"A pre-sentence report is prepared primarily for court use, although an ancillary function is to aid agency decision-making." *Id.* Congress created immigration judges to act for the agency and to apply the laws of the United States to the INS. *See Singh v. Waters*, 87 F.3d 346, 346–47 (9th Cir. 1996). If third parties may have access and rely on pre-sentence reports in certain situations, surely an IJ acting for an agency may as well. Furthermore, although the record does not explain how the IJ obtained the pre-sentence report, determining whether an alien is removable for having committed an aggravated felony certainly meets the "ends of justice" standard.

More importantly, the IJ's narrow use of the pre-sentence report to ascertain whether the loss to the victim was greater than $10,000 did not invade the confiden-

tiality of the rest of the document; no other information was disclosed. Further, the need for disclosure of the amount of loss to the victim outweighs the reasons for maintaining the confidentiality of that information. Thus, we find that admitting the evidence of the amount of loss to the victim contained in the pre-sentence report was not fundamentally unfair, and the IJ properly relied on the pre-sentence report to determine Abreu–Reyes's removability.

## C. AGGRAVATED FELONY

█ Abreu–Reyes argues that the crime for which she was charged, subscribing to a false tax return in violation of 26 U.S.C. § 7206(1), does not fall within the definition of aggravated felony. Under 8 U.S.C. § 1101(a)(43)(M)(i), the term "aggravated felony" means an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." The statute clearly encompasses the offense for which Abreu–Reyes was charged because her offense—subscribing to a false tax return—involved "fraud or deceit," and the loss to the United States exceeded $10,000. " 'Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words ... in search of an intention which the words themselves did not suggest.' " *United States v. Gonzales,* 520 U.S. 1, 8, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) (quoting *United States v. Wiltberger,* 5 Wheat. 76, 95–6, 5 L.Ed. 37 (1820) (Marshall, C.J.)).

We note that the United States Supreme Court recently explained that the term "aggravated felony" has always been "defined expansively" and that it was "broadened substantially" by IIRIRA. *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2276 n. 4, 150 L.Ed.2d 347 (2001) (observing that "*all* convictions involving fraud or deceit in which the loss to the victim exceeds $10,000 (as opposed to $200,000 pre-IIRI-

RA)" are now considered aggravated felonies) (emphasis added).

## D. NATIONALITY CLAIM

It is unclear whether Abreu–Reyes contended that she was a national of the United States. Nonetheless, we have jurisdiction to review her claim that she is a national and, thus, is not "an alien" subject to removal. 8 U.S.C. § 1252(b)(5)(A); *Hughes* at 755. We may dismiss the claim if we find that no genuine issue of material fact regarding her nationality was presented. *Id.* at 758. While Abreu–Reyes mentions the possibility that she might be a "national" in the introduction to her brief, she did not present it as an issue for our review or provide any support for her contention. Thus, we find that Abreu–Reyes failed to establish a genuine issue of material fact regarding her nationality. Accordingly, we dismiss any nationality claim.

## E. CONSTITUTIONAL CLAIM

Abreu–Reyes further claims that her ineligibility for discretionary relief from removal was unconstitutional. Because we conclude that Abreu–Reyes' conviction is an aggravated felony, we lack jurisdiction over this claim.

PETITION FOR REVIEW DENIED.

PAEZ, Circuit Judge, dissenting.

I respectfully dissent. I cannot agree with the majority's conclusion that the presentence report was admissible in Abreu–Reyes's removal hearing to determine the tax loss to the government. There is no evidence that the INS sought release of Abreu–Reyes's presentence report from the district court for which it was prepared as it was required to do by *United States v. Schlette,* 842 F.2d 1574 (9th Cir.), *amended,* 854 F.2d 359 (9th Cir.1988). Additionally, it is unclear whether the dis-

trict court adopted the tax loss reflected in the presentence report in determining Abreu–Reyes's sentence under the U.S. Sentencing Guidelines Manual ("Sentencing Guidelines"). Due to this uncertainty, it was fundamentally unfair to admit the report into evidence and to rely on it to order Abreu–Reyes's removal.

Even assuming that the Immigration Judge ("IJ") properly considered the presentence report, Abreu–Reyes was not removable as an aggravated felon because she did not commit an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). A conviction for filing a false tax return cannot be subsumed under the "fraud or deceit" provision because Congress intended for only one tax offense—tax evasion—and only when the loss to the government exceeds $10,000, to constitute an aggravated felony. 8 U.S.C. § 1101(a)(43)(M)(ii).

### 1. Admission of the Presentence Report

Presentence reports contain background information about a defendant, including the defendant's criminal record and other information relevant to sentencing and treatment, as well as details about the circumstances of the offense and the victims of the offense. Fed.R.Crim.P. 32(b)(4); *Julian v. United States Dep't of Justice*, 806 F.2d 1411, 1414 (9th Cir.1986) ("*Julian I* "), aff'd, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988). Today presentence reports serve two fundamental purposes: (1) district courts use them to determine a defendant's sentence, see Fed. R.Crim.P. 32, and (2) the Bureau of Prisons relies on them to classify prisoners, to determine eligibility for treatment programs, and to assess eligibility for privileges while in custody. *United States Dep't of Justice v. Julian*, 486 U.S. 1, 3, 5, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988) ("*Julian II* "); *Julian I*, 806 F.2d at 1415.[1]

If a third party such as the INS wants to use a presentence report for another purpose, it must seek release of the report from the district court for which it was prepared. *See Schlette*, 842 F.2d at 1581. In *Schlette*, as the majority notes, we held that when a third party requests that a district court release a presentence report, the third party must establish that disclosure will "serve the ends of justice." *Id.* at 1579, 1581; *see also Julian II*, 486 U.S. at 12, 108 S.Ct. 1606 (noting that courts generally require "some showing of special need before they will allow a third party to obtain a copy of a presentence report"). The district court must then weigh the need for disclosure against the need for confidentiality. *Schlette*, 842 F.2d at 1581.

The majority holds that the IJ properly relied on Abreu–Reyes's presentence report because the determination of whether an alien has committed an aggravated felony meets *Schlette's* "ends of justice" standard. Maj. op. at 1033–34. Whether the "ends of justice" standard has been met, however, is a determination that should be

---

1. Prior to the enactment of the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, Tit. II, ch. 2, 98 Stat.1987, presentence reports were also routinely used to aid in parole determinations. *Julian II*, 486 U.S. at 5 n. 3, 108 S.Ct. 1606; *Julian I*, 806 F.3d at 1415.

The majority cites *Schlette*, 842 F.2d at 1581, for the proposition that "an ancillary function" of presentence reports "is to aid agency decision-making," and therefore broadly encompasses the INS's civil enforcement responsibilities. Maj. op. at 1033. The majority, however, takes this statement in *Schlette*, which cites *Julian I*, 806 F.2d at 1415, out of context. In *Julian I*, we were not discussing the use of a presentence report by any governmental agency. Instead, our discussion focused on the use of presentence reports by the district court, the Bureau of Prisons, and the Parole Commission. 806 F.2d at 1415.

made initially by the district court familiar with the underlying criminal proceeding. Although requesting the district court to release an alien's presentence report may be a burden for the INS, it is an important step in preserving confidential information and ensuring the reliability of the report.[2] If the district court were to order that the presentence report be released, then it must redact any information that it determines is confidential pursuant to Rule 32(b)(5) of the Federal Rules of Criminal Procedure.[3] *See id.* at 1585 (remanding to the district court to redact confidential information). The court would also have the opportunity to redact erroneous or unreliable information so that use of the report other than for sentencing or prison classification would serve the "ends of justice."

There is no evidence in the administrative record here that the INS filed a motion in the district court to obtain a copy of Abreu–Reyes's presentence report. *Cf. United States v. Villa,* 701 F.Supp. 760, 761–62 (D.Nev.1988) (releasing a presentence report to the INS for use in a deportation proceeding). Without the benefit of the district court's ruling ordering disclosure of the report, we cannot be certain that the report does not contain confidential, erroneous, or unreliable information. Because the INS did not adhere to *Schlette's* mandate, it was fundamentally unfair for the immigration judge to admit the report into evidence. *See Baliza v. INS,* 709 F.2d 1231, 1233 (9th Cir.1983)

(holding that the standard for admissibility of hearsay evidence in administrative proceedings is whether it is "probative and whether its admission [i]s fundamentally fair").

It was also fundamentally unfair to admit the report into evidence because it is unclear from the administrative record whether the district court relied on the tax loss reflected in the presentence report. The IJ stated that, in sentencing Abreu–Reyes, the district court apparently relied on the presentence report's conclusion that the tax loss to the government was $37,546. A review of the presentence report and Abreu–Reyes's sentence, however, demonstrates that there is insufficient information in the administrative record to ascertain whether the sentencing court adopted an amount in excess of $10,000 as the tax loss in determining Abreu–Reyes's sentence.

The presentence report recommended a base offense level of 12, based on a tax loss between $23,500 and $40,000 under the Sentencing Guidelines in effect at the time of Abreu–Reyes's sentence. U.S. Sentencing Guidelines Manual § 2T4.1 (2000). The report also recommended a Specific Offense Characteristic upward adjustment of 2 levels and a downward adjustment for Acceptance of Responsibility of 2 levels. Thus, the suggested total offense level was 12. According to the Sentencing Table, this offense level corresponded to a 10–16 month sentence. *Id.* ch. 5, pt. A.

---

**2.** As an alternative to seeking release of a presentence report, the INS could obtain a copy of the transcript of a defendant's sentencing hearing. The transcript would contain the district court's factual and sentencing guideline determinations. *See* Fed.R.Crim.P. 32(c)(1); 18 U.S.C. § 3553(c).

**3.** Rule 32(b)(5) provides:
    The presentence report must exclude: (A) any diagnostic opinions that, if disclosed,

might seriously disrupt a program of rehabilitation; (B) sources of information obtained upon a promise of confidentiality; or (C) any other information that, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons.
These same confidential provisions were contained in subsection (c)(3)(A) of the previous version of Rule 32, which is cited in *Schlette.*

Abreu–Reyes, however, received only a six-month sentence. The greatest offense level that corresponded to a six-month sentence was offense level 10. *Id.* We cannot tell from the administrative record just how the district court arrived at this sentence. The district court could have determined that the tax loss was in fact lower than that estimated in the pre-sentence report, and perhaps even under $10,000. Fixing the tax loss between $8,000 and $13,500, the base offense level would have been 10, not 12. With a base offense level of 10, the final offense level would have corresponded to a sentencing range of 6–10 months.

Alternatively, the district court could have departed downward 2 levels to reach the lower sentence or could have considered the plea agreement, referenced by the majority, which apparently did not contemplate the Specific Offense Characteristic upward adjustment of 2 levels. Without the transcript of the sentencing hearing, we have no basis for discerning how the district court arrived at Abreu–Reyes's six-month sentence and, more importantly, whether the district court concluded that the tax loss to the government was greater than $10,000.[4]

This uncertainty, and its drastic consequences for Abreu–Reyes in this case, is precisely why we established the rule in *Schlette* dictating that a third party, such as the INS, must obtain release of a pre-sentence report from the district court be-

fore it can use the report in another proceeding. The IJ should have sustained Abreu–Reyes's objection to the presentence report as hearsay.[5]

## 2. Aggravated Felony

Even assuming that the presentence report was properly admitted into evidence, Abreu–Reyes is still not removable because she did not commit an aggravated felony. Congress has defined an aggravated felony in pertinent part as:

(M) an offense that—

(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

(ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000[.]

8 U.S.C. § 1101(a)(43).

That Congress included a separate statutory provision for tax evasion demonstrates that it did not intend to include tax offenses within the "fraud or deceit" text. Rather, as the statute reflects, Congress drew a distinction between tax offenses and other crimes involving fraud and deceit. Congress then targeted only the more egregious act of tax evasion, and only when the loss to the government exceeds $10,000, as sufficiently serious to warrant removal. "The logic that invests the omis-

---

4. Abreu–Reyes's sentence could not have been a combination of a six-month sentence plus either community confinement or home detention with supervised release, as the majority suggests. *See* U.S. Sentencing Guidelines Manual § 5C1.1(c)(2) (2000) (explaining that a Zone B minimum term of imprisonment may be satisfied by imprisonment plus supervised release with a condition of community confinement or home detention). This is because the Judgment and Probation/Commitment Order did not impose community con-

finement or home detention as a condition of supervised release.

5. The majority contends that there is "no indication" that Abreu–Reyes filed written objections to the presentence report pursuant to Rule 32(b)(6)(B) of the Federal Rules of Criminal Procedure. Maj. op. at 1032–33. Without reviewing the district court record, we cannot determine whether Abreu–Reyes's criminal defense lawyer filed Rule 32(b)(6)(B) objections.

sion with significance is familiar: the mention of some implies the exclusion of others not mentioned.... *Expressio unius est exclusio alterius.*" *United Dominion Indus., Inc. v. United States,* 532 U.S. 822, 836, 121 S.Ct. 1934, 150 L.Ed.2d 45 (2001) (internal quotation marks and citation omitted).

If Congress intended for tax crimes other than tax evasion to constitute aggravated felonies when the loss to the government exceeds $10,000, it could have easily defined an aggravated felony in 8 U.S.C. § 1101(a)(43)(M)(ii) as any "tax offense in which the revenue loss to the Government exceeds $10,000" or identified each relevant section of Title 26. *Cf. United States v. Corona–Sanchez,* 234 F.3d 449, 454 (9th Cir.2000) (reasoning that because Congress used the term "theft offense" rather than "theft" to define an aggravated felony and "expressly included the 'receipt of stolen property' under the definition of 'theft offense,' ... Congress intended to paint 'theft offense' with a broad brush").

Thus, even assuming that the presentence report was admissible, Abreu–Reyes did not commit an aggravated felony. Accordingly, I would grant the petition.[6]

---

**6.** Because I would grant the petition, I find it unnecessary to reach Abreu–Reyes's remaining arguments.