

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2004

# Lee v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-4602

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lee v. Atty Gen USA" (2004). *2004 Decisions.* Paper 657.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/657

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 02-4602

KI SE LEE; HYANG MAHN YANG,

Petitioners

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent

ON PETITION FOR REVIEW OF AN
ORDER OF THE BOARD OF
IMMIGRATION APPEALS
(Nos. A38 656 406, A36 775 995)

Argued: December 5, 2003

Before: SLOVITER and ALITO,
Circuit Judges, and OBERDORFER,[*]
District Judge

(Opinion Filed: May 19, 2004)

* The Honorable Louis F. Oberdorfer, Senior District Judge for the District of Columbia, sitting by designation.

*Counsel for Petitioners*

Steven A. Morley (Argued)
Morley, Surin & Griffin, P.C.
Constitution Place
325 Chestnut Street, Suite 1305-P
Philadelphia, Pennsylvania 19106

*Counsel for Respondent*

Peter D. Keisler
Assistant Attorney General
Civil Division
Linda S. Wernery
Senior Litigation Counsel
Office of Immigration Litigation
Lyle D. Jentzer (Argued)
Trial Attorney
Douglas E. Ginsburg, Esq.
Michael P. Lindemann, Esq.
John M. McAdams Jr., Esq.
John D. Williams, Esq.
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878

OPINION OF THE COURT

OBERDORFER, Senior District Judge:

In this appeal we consider the question of whether a conviction for filing a false tax return, in violation of 26 U.S.C. § 7206(1) of the Internal Revenue Code, is an "aggravated felony" as defined by section 101(a)(43)(M)(i) of the Immigration and Naturalization Act, 8

U.S.C. § 1101(a)(43)(M)(i). We conclude that it is not, and, therefore, that the petitioners' convictions do not render them removable. Accordingly, we will grant the Petition for Review of the decision and vacate the order of removal against the petitioners.

## I. BACKGROUND

The relevant facts are not complicated. The petitioners, Ki Se Lee and Hyang Mahn Yang, are husband and wife. They are both natives and citizens of Korea, but they have resided in the United States as lawful permanent residents since the 1980s.[1] They have grown children who are United States citizens.

For many years, the petitioners operated a dry cleaning business in Philadelphia. In May 1997, they pled guilty to a three-count information, which charged them with filing false income tax returns for 1989, 1990 and 1991, all in violation of 26 U.S.C. § 7206(1).[2] The information further alleged that, in the three tax years at issue, petitioners understated their income by $112,453, causing a tax deficiency of $55,811. Departing downward substantially, each petitioner was sentenced to three years probation, a condition of which was three months home confinement, with permission to leave for work, medical services, etc., one hundred hours of community service, and the payment of all taxes, interest and penalties due to the IRS.[3] AR 110.

Thereafter, in November 1997, the

---

[1] Petitioner Yang entered the United States in 1980; petitioner Lee entered in 1984.

[2] In relevant part, section 7206 provides that

> any person who . . . (1) . . . Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter
>
> . . .
>
> shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C. § 7206.

[3] The petitioners' Sentencing Guideline range was 4 to 10 months confinement, one year supervised release, and a $1,000 to $10,000 fine.

INS charged petitioners with being removable for having been convicted of an "aggravated felony," as defined by section 101(a)(43)(M)(i) and (ii) of the Immigration and Naturalization Act. *See* 8 U.S.C. § 1101(a)(43)(M). Section 101(a)(43)(M) includes in the felonies classified as "aggravated" for purposes of deportation:

> An offense that -
>
> (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or
>
> (ii) is described in § 7201[4] of the Internal

---

[4] In relevant part, section 7201 provides:

> Attempt to evade or defeat tax.
>
> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of

Revenue Code of 1986 (related to tax evasion) in which the revenue loss to the Government exceeds $10,000; . . .

8 U.S.C. § 1101(a)(43)(M)(i) & (ii). The petitioners moved to terminate removal proceedings on the ground that a conviction for violating section 7206(1) of the Internal Revenue Code was not an aggravated felony under either subsection (M)(i) or (M)(ii). The immigration judge denied their motion, ruling in July 1998 that petitioners' convictions rendered them removable under <u>either</u> subsection. App. 47. He ordered each petitioner "removed to the Republic of (South) Korea." App. 48.

On December 2, 2002, the Board of Immigration Appeals affirmed the immigration judge's decision without opinion, making it the final agency decision. *See* 8 C.F.R. § 1003.1(e)(4). The petitioners seek review.

## II. DISCUSSION

On appeal, the petitioners challenge the immigration judge's order of removal on the ground that their convictions for violating 8 U.S.C. § 7206(1) do not qualify as aggravated felonies under either 8 U.S.C. § 1101(a)(43)(M)(i) <u>or</u> (ii), and, therefore, that they are not removable

---

prosecution.

26 U.S.C. § 7201.

pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).[5] As the government now concedes that subsection (M)(ii) does not apply, we need only consider whether the petitioners' convictions meet the definition of aggravated felony in subsection (M)(i).

## A.    Jurisdiction

As an initial matter, we consider the government's contention that under 8 U.S.C. § 1252(a)(2)(C) we lack jurisdiction to review the petitioners' order of removal. That provision states that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)." As recently explained, however, this jurisdiction-stripping provision comes into play only when two facts exist: "(1) the petitioner is an alien (2) who is deportable by reason of having been convicted of one of the enumerated offenses." Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001). We necessarily have jurisdiction "to determine whether these jurisdictional facts are present." Id.; see Valansi v. Ashcroft, 278 F.3d 203, 207 (3d Cir. 2002). We are thus not precluded from reviewing the petitioners' argument that they have not been convicted of an "enumerated offense." If the petitioners

are right, judicial review of the removal orders is not precluded, and they will be vacated for failing to allege a removable offense. If the petitioners are wrong, we lack jurisdiction to inquire any further into the merits, and the removal order will stand.

## B.    Have the Petitioners Been Convicted of an Aggravated Felony?

The petitioners argue that no conviction under section 7206(1) for filing false tax returns can satisfy the definition of aggravated felony in 8 U.S.C. § 1101(a)(43)(M)(i). We apply de novo review to this purely legal question of statutory interpretation that governs our own jurisdiction. See Valansi, 278 F.3d at 207.

"The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Id. at 209 (quoting Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001)). If the statutory meaning is clear, our inquiry is at an end. Id. If the statutory meaning is not clear, we must try to discern Congress' intent using the ordinary tools of statutory construction. See INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987). "If, by employing traditional tools of statutory construction, we determine that Congress' intent is clear, that is the end of the matter." Valansi, 278 F.3d at 208 (quoting Bell v. Reno, 218 F.3d 86, 90 (2d Cir. 2000)). If we are unable to discern Congress' intent using the normal tools of statutory construction, we will

---

[5]    In relevant part, section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

generally give deference to the Board's interpretation, so long as it is reasonable. Id.

We thus begin our analysis with the statutory language of subsection (M)(i). It may be argued that the petitioners' convictions under section 7206(1) for filing false tax returns clearly involve "fraud and deceit," as required by subsection (M)(i), and that we need look no further. However, the precise question before us is whether the statutory language makes it plain and unambiguous that subsection (M)(i) covers convictions for violating section 7206(1). This question cannot be answered solely by looking at "the language itself"; we must also be cognizant of "the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 209; cf. United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 454-55 (1993) ("A statute's plain meaning must be enforced, of course, and the meaning of a statute will typically heed the commands of its punctuation. But a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning. Along with punctuation, text consists of words living 'a communal existence,' in Judge Learned Hand's phrase, the meaning of each word informing the others and all in their aggregate tak[ing] their purport from the setting in which they are used. Over and over we have stressed that [i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.") (internal citations and quotations omitted).

Here, these broader considerations, specifically the presence of subsection (M)(ii), preclude a conclusion that the statutory language of subsection (M)(i) clearly and unambiguously covers a section 7206(1) conviction. Subsections (M)(i) and (M)(ii) were enacted simultaneously in 1996. Subsection (M)(i) has a general application – the gamut of state and federal crimes involving fraud and deceit causing losses over $10,000. Subsection (M)(ii) zeroes in on the crime of federal tax evasion, as described in section 7201 of the Internal Revenue Code, 26 U.S.C. § 7201; it is silent about any other criminal tax offenses. Gross examination of (M) leaves obvious questions: Why does subsection (M) include both a general provision encompassing "fraud and deceit" and specific provision directed solely at the offense of federal tax evasion? If subsection M(i) applies to tax offenses, what is the purpose of subsection (M)(ii)? Does the juxtaposition of subsections (M)(i) and (M)(ii) signal an intent to exclude other tax offenses from the definition of aggravated felonies in (M)(i)? That subsection (M)(i) raises these questions demonstrates that its language does not have a plain and unambiguous meaning, at least not as applied to a conviction under section 7206(1) of the

5

Internal Revenue Code.[6] Therefore, we must turn to the traditional tools of statutory construction to see if they assist in discerning Congress' intent.

We start with the principle that if at all possible, we should adopt a construction which recognizes each element of the statute. See Acceptance Ins. Co. v. Sloan, 263 F.3d 278, 283 (3d Cir. 2001) (recognizing that it is an "axiom of statutory construction that whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage") (internal quotations omitted). The only construction that satisfies this principle is the one suggested by the petitioners: that subsection (M)(i) does not apply to tax offenses. If the government's proposed construction were adopted, and we were to hold that any tax offense involving fraud and deceit over $10,000 was an aggravated felony under subsection (M)(i), subsection (M)(ii) would be mere surplusage. We have considered the government's contention that there could be a case where a conviction for tax evasion would not involve fraud or deceit, in which case subsection (M)(ii) would exist simply to catch any cases not covered by subsection (M)(i), but the government has not identified, and we are unable to envision, what that case might be. Indeed, in addressing what conduct might constitute tax evasion under section 7201, the Supreme Court has stated that an "affirmative willful attempt [to evade] may be inferred from . . . any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499 (1943) (emphasis added). Accordingly, the goal of avoiding surplusage in construing a statute is satisfied only if subsection (M)(i) does not apply to tax offenses.

Another "commonplace [rule] of statutory construction" is that the "specific governs the general." Doe v. National Bd. of Medical Examiners, 199 F.3d 146, 154-55 (3d Cir. 1999) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)); see also Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 228 (1957) ("The law is settled that however inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment."), quoted in Doe v. National Bd. of Medical Examiners, 199 F.3d at 155. As explained by the Supreme Court, "where Congress includes particular language in one section of the statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Cardoza-Fonseca, 480 U.S. at 447-48; see also Albright v. Oliver, 510 U.S. 266, 273 (1994). Moreover, "[t]his principle has special force when Congress has targeted specific problems with specific solutions in the context of a general statute." Doe v. National Bd. of Medical Examiners, 199 F.3d at 155. And

---

[6] But see Abreu-Reyes v. INS, 292 F.3d 1029, 1037 (9th Cir. 2002) (denying petition for review), withdrawn on other grounds, 350 F.3d 966 (9th Cir. 2003).

6

it applies "particularly when the two [provisions] are interrelated and closely positioned, both in fact being parts of the same statutory scheme." Id. (internal quotations omitted).

The statutory section at issue here is a perfect example of this phenomenon. Subsections (M)(i) and (M)(ii) were adopted at the same time, appear adjacent to each other, and are the only two parts of subsection (M), within a statute with many, many subsections. Subsection (M)(i) is a general provision covering "fraud and deceit"; subsection (M)(ii) is a very specific provision that only applies to federal tax evasion. Accordingly, the principle that the specific governs the general also favors the interpretation that subsection (M)(ii) identifies the only removable tax offense, tax evasion, while subsection (M)(i) does not apply to tax offenses.[7]

While the legislative history of the Immigration and Naturalization Act offers no help in discerning Congress' intent in enacting subsection (M)(i),[8] the history and structure of the criminal tax laws persuade us that in enacting subsection (M)(ii), Congress intended to single out tax evasion as the only tax crime that is a removable offense. See United States Nat'l Bank of Or. v. Indep. Ins. Agents of America, Inc., 508 U.S. 439, 455 (1993) ("Statutory construction is a holistic endeavor and, at a minimum, must account for a statute's full text, language[,] as well as punctuation, structure, and subject matter.") (internal quotations and citations omitted), quoted in Tineo v. Ashcroft, 350 F.3d 382, 391 (3d Cir 2003).

As the Supreme Court explained many years ago, tax "evasion" is the "capstone" of tax law violations. See Spies, 317 U.S. at 497. A felony since at least 1903, it has long been recognized as "the gravest of offenses against the revenues." Id. at 499. In his opinion for the Court in Spies, Justice Robert Jackson (a former General Counsel for the Bureau of Internal Revenue, Assistant Attorney General for the Tax Division, Solicitor General, and Attorney General), after

---

[7] See also Abreu-Reyes, 292 F.3d at 1037 (Paez, J., dissenting) ("That Congress included a separate statutory provision for tax evasion demonstrates that it did not intend to include tax offenses within the "fraud or deceit" text. Rather, as the statute reflects, Congress drew a distinction between tax offenses and other crimes involving fraud and deceit. Congress then targeted only the more egregious act of tax evasion, and only when the loss to the government exceeds $10,000, as sufficiently serious to warrant removal.")

[8] In 1996, Congress vastly expanded the number and types of offenses that qualified as aggravated felonies. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat. 3009 (1996). For the most part, these changes were adopted without any discussion of their particular purpose.

7

outlining the then civil and criminal "penalties imposed by Congress to enforce the tax laws,"[9] id. at 495, concluded that "[t]he climax of this variety of sanctions is the serious and inclusive felony, defined to consist of a willful attempt in any manner to evade or defeat the tax," id. at 497 (emphasis added). Thus, for Congress to select tax evasion as the "aggravated" tax felony, justifying removal of an alien who committed it, while sparing lesser tax felons, is thoroughly consistent with the history and structure of criminal tax offenses.

In the end, after considering various tools of statutory construction, we believe that Congress' intent is clear: in enacting subsection (M)(ii), it intended to specify tax evasion as the only deportable tax offense; it follows that it did not intend subsection (M)(i) to cover tax offenses.[10]

To the extent that any ambiguity lingers, we note that there is a "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987) (principle is a corollary to the rule of lenity that applies in construing criminal statutes); see also INS v. St. Cyr, 533 U.S. 289 (2001); see also Valansi ("This rule of construction . . . may be applied as a canon of last resort to determine the intent of Congress on an ambiguous issue."). The facts of the present case highlight the reason this principle exists: it is a plain fact that in reality neither the prosecution, nor the sentencing judge involved in the prosecution, plea and sentencing of petitioners, treated their offense as "aggravated." The prosecution acquiesced in, if it did not negotiate, a plea agreement, and the judge imposed a sentence characteristic of a misdemeanor, not a felony – much less an "aggravated one" (however it be defined). See Francis v. Reno, 269 F.3d 162, 170-71 (3d Cir. 2001) (noting that the importance of this principle is highlighted "given the changes in immigration law effectuated by the [1996 amendments to the Immigration and

---

[9] These sanctions ranged from civil delinquency penalties ranging from 5 to 25 percent to criminal penalties calibrated from misdemeanors (*e.g.* former § 145(a)) to tax evasion, punishable as a felony and carrying a maximum penalty of 5 years confinement and a $5,000 fine (former § 145(b), now § 7201).

[10] We note that if we had not reached this conclusion, we would confront the question of whether we should defer to the Board's interpretation in a situation where the Board itself has not ruled on the issue before us, see 8 C.F.R. 1003.1(e)(4) (affirmance without

---

opinion indicates only approval of the outcome, not the immigration judge's reasoning), and where the meaning of the statutory provision depends, in part, on an understanding of the Internal Revenue Code, a subject on which the Board has no expertise.

8

Nationality Act]).”[11]

Accordingly, we conclude that the petitioners' conviction for violating section 7206(1) of the Internal Revenue Code is not a removable offense under 8 U.S.C. § 1101(a)(43)(M)(i). That decision makes it unnecessary to consider the petitioners' argument that the record does not establish a loss of $10,000.

## III. CONCLUSION

The Petition for Review of the decision of the BIA approving the removal order of the IJ is granted with directions to vacate the removal orders with respect to the petitioners.

---

[11] Our dissenting colleague speculates that "If Congress had not wanted subsection M(i) to apply to 'tax offenses,' Congress surely would have included some language in that provision to signal that intention." But Congress is chargeable with knowledge of the same well-established principles of statutory construction which we feel compelled to apply. If Congress had not intended us to apply them, it surely would have signaled to that effect.

Further, our colleague also speculates that Congress may have enacted M(ii) "simply to make certain even at the risk of redundancy that tax evasion qualifies as an 'aggravated felony.'" It may be that Congress will wish to broaden the categories of aggravated felony to include other or all tax felonies. But we must interpret what it has written by well-recognized rules of statutory construction, unaided by speculation.

Lee v. Ashcroft

No. 02-4602

ALITO, Circuit Judge, dissenting

I must respectfully dissent because I believe that the offense of filing a false tax return and thereby causing a tax loss of more than $10,000 falls squarely within the definition of an "aggravated felony" in 8 U.S.C. § 1101(a)(43)(M)(i). Accord Abreu-Reyes v. INS, 292 F.3d 1029 (9th Cir. 2002), withdrawn on other ground, 350 F.3d 966 (9th Cir. 2003).

The term "aggravated felony" is defined to include:

> (M) an offense that -
>
> *(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000*; or
>
> (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000 . . . .

8 U.S.C. § 1101(43)(M)(emphasis added).

Thus, subsection (M)(i) sets out two requirements. First, the offense must "involve fraud or deceit." This means that the offense must include "fraud or deceit as a necessary component or element." Valansi v. Ashcroft, 278 F.3d 203, 210 (3d Cir. 2002). Second, "the loss to the victim or victims" must exceed $10,000.

The offense of filing a false tax return and causing a tax loss of more than $10,000 satisfies these elements. "Fraud" or "deceit" is a necessary element of 26 U.S.C. § 7206(1), which makes it a crime to make or subscribe "any return, statement, or other document" that the defendant "does not believe to be true and correct as to every material matter." In addition, causing a tax loss of more than $10,000 results in a qualifying "loss to the victim," i.e., the United States Treasury.

Despite the clarity of subsection M(i), the majority concludes that this provision does not apply to tax offenses. Invoking two venerable canons of statutory interpretation (viz., that statutes should be read if possible to avoid surplusage and that the specific should take precedence over the general), the majority reasons as follows. The provision that directly follows subsection (M)(i), i.e., 8 U.S.C. §1101(43)(M)(ii), specifically provides that the offense of tax evasion (26 U.S.C. § 7201) is an aggravated felony. This specific provision would not have been needed if (M)(i) applied to tax offenses, because tax evasion is an offense that involves fraud or deceit. Therefore, Congress must have intended that (M)(i) not apply to "tax offenses."

I must disagree with this analysis for two reasons. First and most important, this analysis fails to account for the language of subsection M(i). If Congress had not wanted subsection M(i) to apply to "tax offenses," Congress surely would have included some language in that provision to signal that intention. As

10

adopted, however, subsection M(i) contains no such hint. In order to argue that the filing of a false tax return does not come within the language of subsection M(i), one would have to argue either that the term "victim" was not meant to apply to the Treasury or that the term "loss" does not include a tax loss. However, both of these arguments fail to comport with ordinary usage. See United States v. Fleming, 128 F.3d 285, 288 (6th Cir. 1997)("In tax fraud cases, we consider the United States Treasury the victim."); U.S.S.G. § 2T4.1 ("Tax Loss" table).

Second, the majority errs in inferring from subsection M(ii) that Congress believed that subsection M(i) did not reach tax offenses. Subsection M(ii) may have been enacted simply to make certain – even at the risk of redundancy – that tax evasion qualifies as an aggravated felony. While good statutory draftsmanship seeks to avoid surplusage, other goals, such as certainty and the avoidance of litigation, are sometimes more important. Here, those responsible for drafting the provisions in question may have had a measure of doubt that subsection M(i) would be interpreted as covering all (or any) evasion cases, and subsection M(ii) may have been added to dispel any such uncertainty.

The tax evasion statute provides in relevant part as follows:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . .

26 U.S.C. § 7201.

This offense has three elements: "1) the existence of a tax deficiency, 2) an affirmative act constituting an attempt to evade or defeat payment of the tax, and 3) willfulness." United State v. McGill, 964 F.2d 222, 229 (3d Cir.), cert. denied, 506 U.S. 1023 (1992). See also United States v. Voigt, 89 F.3d 1050, 1089 (3d Cir. 1996). In this context, willfulness requires proof that the defendant knew that his or her conduct was unlawful. Cheek v. United States, 498 U.S. 192, 201 (1991).

Neither "fraud" nor "deceit" is mentioned in the statute as a necessary element of tax evasion. The statute applies to the willful attempt "*in any manner* to evade or *defeat* any tax imposed by this title or the payment thereof." 26 U.S.C. § 7201 (emphasis added). Likewise, leading cases interpreting this language do not hold that fraud or deceit is an element of the offense. In Spies v. United States, 317 U.S. 492 (1943), the Supreme Court emphasized the breadth of the statutory language:

11

Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished "in any manner."

Id. at 499.[12]

In light of the statutory language and the case law, cautious drafters might have concluded that it was prudent to add subsection M(ii) for at least two reasons. First, even if the drafters, like the majority in this case (see Maj. Op. at 9-10), could not think of an evasion case that did not involve fraudulent or deceitful conduct, the drafters might not have trusted their ability to anticipate every possible variety of evasion case and might have added subsection M(ii) just to be sure that no evasion case fell outside the definition. Second, even if the drafters were certain

that no defendant would ever be convicted of tax evasion without proof of fraudulent or deceitful conduct, the drafters might have been concerned that some courts would hold that tax evasion falls outside the scope of subsection M(i) because neither "fraud" nor "deceit" is a formal element of the offense. See Valansi, 278 F.3d at 210 (in determining whether an offense involves "fraud or deceit," we look to the necessary elements of the offense of conviction). Thus, given the choice between (a) the risk that some or all tax evasion cases would not be covered and (b) the inclusion of a potentially redundant statutory provision, the drafters might have selected the latter option.

For these reasons, I think that it is unwarranted to infer from subsection M(ii) that subsection M(i) was not intended to reach "tax offenses." I would heed the clear language of subsection M(i)[13] and

---

[12]Although the Court went on to provide a list of deceitful activities from which an "affirmative willful attempt" could be inferred, the Court took pains to note that this list was furnished "[b]y way of illustration, and not by way of limitation." 317 U.S. at 499.

[13]Even if the statutory language were ambiguous, I would defer to the BIA's reasonable interpretation that § 7206(1) is an aggravated felony. See I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999)("Because the Court of Appeals confronted questions implicating '[the BIA's] construction of the statute which it administers,' the court should have applied the principles of deference described in Chevron"); Valansi, 278 F.3d at 208 ("Despite our exercise of de novo review, we will give deference to the agency's interpretation of the aggravated felony definition if

12

hold that the offense of filing of a false tax return and causing a tax loss of more than $10,000 is an aggravated felony.

---

Congress's intent is unclear"); <u>Lukwago v. Ashcroft</u>, 329 F.3d 157, 166 (3d Cir. 2003)("We must review the BIA's statutory interpretation of the INA under the deferential standard of <u>Chevron</u>."). Appellants argue that when the INA is ambiguous we should invoke the rule of lenity and find in the alien's favor. <u>See</u>, <u>e.g.</u>, <u>I.N.S. v. Cardoza- Fonseca</u>, 480 U.S., 421, 449 (1987); <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 320 (2001). The rule of lenity, however, is reserved for situations in which the normal rules of statutory interpretation are unhelpful. <u>See</u> <u>St. Cyr</u>, 533 U.S. at 320, n. 45 ("[T]he cases and rules cited by Petitioner are distinguishable because '[w]e only defer, however, to agency interpretations of statutes that, applying the normal "tools of statutory construction," are ambiguous.'")

13