# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AKIO KAWASHIMA; FUSAKO
KAWASHIMA,
　　　　　　　　*Petitioners,*

　　　　　v.

ERIC H. HOLDER JR.,* Attorney
General,
　　　　　　　　*Respondent.*

No. 04-74313

Agency Nos.
A38-554-590
A38-554-591

AKIO KAWASHIMA; FUSAKO
KAWASHIMA, aka Fusako Nakajima,
　　　　　　　　*Petitioners,*

　　　　　v.

ERIC H. HOLDER JR.,* Attorney
General,
　　　　　　　　*Respondent.*

No. 05-74408

Agency Nos.
A38-554-590
A38-554-591

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 8, 2007—Pasadena, California

Opinion Filed September 18, 2007
Opinion Withdrawn; New Opinion Filed July 1, 2008
Opinion Withdrawn; New Opinion Filed January 27, 2010
Opinion Withdrawn; New Opinion Filed August 4, 2010

---

*Eric H. Holder Jr. is substituted for his predecessor Michael B.
Mukasey as Attorney General of the United States. Fed. R. App. P.
43(c)(2).

11181

Before: Diarmuid F. O'Scannlain, Edward Leavy, and
Consuelo M. Callahan, Circuit Judges.

Order;
Dissent to Order by Judge Graber;
Opinion by Judge O'Scannlain

**COUNSEL**

Judith L. Wood, Law Offices of Judith L. Wood, Los Angeles, California, argued the cause for the petitioners and filed the briefs. Todd Beacraft, Law Offices of Judith L. Wood, was also on the briefs.

Nancy Freedman, Office of Immigration Litigation, Washington D.C., argued the cause for the respondent. Peter D. Keisler, Assistant Attorney General, Civil Division, Washington,

D.C., M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation, and James A. Hunolt, Senior Litigation Counsel, Office of Immigration Litigation, were also on the brief.

Jenny C. Lin-Alva, Ord & Norman, LLC, San Francisco, California, filed a supplemental brief on behalf of the petitioners. Edward O.C. Ord, Ord & Norman, LLC, and Thomas J. Whalen, Eckert Seamans Cherin & Mellott, Washington, D.C., were also on the brief.

Jennifer J. Keeney, Senior Litigation Counsel, Office of Immigration Litigation, Washington, D.C., filed a supplemental brief on behalf of the respondent. Tony West, Assistant Attorney General, Civil Division, Washington, D.C., and Donald E. Keener, Deputy Director, Office of Immigration Litigation, were also on the brief.

Stephen W. Manning, American Immigration Lawyers Association, Portland, Oregon, filed a brief on behalf of amicus curiae the American Immigration Lawyers Association and in support of the petitioners' supplemental brief. Jessica M. Boell, American Immigration Lawyers Association, Jennifer M. Rotman, American Immigration Lawyers Association, and Andrew Knapp, American Immigration Lawyers Association, were also on the brief.

Jenny C. Lin-Alva, Ord & Norman, LLC, San Francisco, California, filed a petition for rehearing with a suggestion for rehearing and a reply on behalf of the petitioners. Edward O.C. Ord, Ord & Norman, LLC, Thomas J. Whalen, Eckert Seamans Cherin & Mellott, Washington, D.C., and Mark Johnston, Eckert Seamans Cherin & Mellott, were also on the petition and the reply.

Jennifer J. Keeney, Senior Litigation Counsel, Office of Immigration Litigation, Washington, D.C., filed a brief opposing rehearing on behalf of the respondent. Tony West,

Assistant Attorney General, Civil Division, Washington, D.C., Donald E. Keener, Deputy Director, Office of Immigration Litigation, Matthew B. George, Trial Attorney, Office of Immigration Litigation, and Katherine A. Smith, Trial Attorney, Office of Immigration Litigation, were also on the brief.

---

**ORDER**

The opinion filed in this case on January 27, 2010, and published at 593 F.3d 979, is withdrawn. A new opinion is filed contemporaneously with the filing of this order.

The panel has voted unanimously to deny the petition for rehearing. Judges O'Scannlain and Callahan have voted to deny the petition for rehearing en banc, and Judge Leavy has so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing or petitions for rehearing en banc will be entertained.

---

GRABER, Circuit Judge, with whom WARDLAW and PAEZ, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully dissent from denial of rehearing en banc.

An aggravated felony is, among other things:

an offense that—

(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

(ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000[.]

8 U.S.C. § 1101(a)(43)(M). The panel holds that it is *plain* that the term "loss to the victim or victims" in subsection (i) necessarily encompasses tax revenue loss to the Government even though subsection (ii) specifically governs tax revenue loss to the Government. The panel opinion reaches that conclusion only by contravening clear rules of statutory interpretation.

### A.   *Statutory Text Must be Read in Context*

Read in isolation, there is little dispute that the term "loss to the victim or victims" is broad enough that it *might* encompass a tax revenue loss to the government. But it is black-letter law that we may not read statutory terms in isolation. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, *the specific context in which that language is used, and the broader context of the statute as a whole*." (emphasis added)); *Smith v. United States*, 508 U.S. 223, 233 (1993) ("Just as a single word cannot be read in isolation, nor can a single provision of a statute."); *United States v. Morton*, 467 U.S. 822, 828 (1984) ("We do not . . . construe statutory phrases in isolation; we read statutes as a whole. Thus, the [term in question] must be read in light of the immediately following phrase . . . ." (footnote omitted)); *see also Harbison v. Bell*, 129 S. Ct. 1481, 1492 (2009) (Roberts, C.J., concurring in the judgment) ("We do not construe statutory phrases in isolation; we read statutes as a whole. This certainly applies to reading sentences as a

whole." (citation, alterations, and internal quotation marks omitted)).

Often, although a phrase sweeps broadly when read in isolation, surrounding statutory text clarifies that Congress actually intended a narrower meaning. Applications of that simple rule of construction appear throughout the Supreme Court's jurisprudence. For example:

- "The [relevant] term . . . is not defined in the statute, and, out of context, its ordinary meaning could include [the situation at hand]. However, we must not analyze one term of [the statute] in isolation. When [the statute] is read as a whole, the better interpretation is that [the term does not encompass the situation at hand]." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 852 (2001) (citation omitted).

- "If considered in isolation, the [relevant] phrase . . . could embrace a wide [definition]. After all, in ordinary meaning and usage, [the term has a broad definition]. . . . The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text [and upon other considerations]." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) (citation omitted).

- "[T]he dissent's point that subsection (a) seems clear when read in isolation proves nothing, for 'the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.' When subsection (a) is read in context, there is no avoiding the question, 'What could

Congress have been getting at with both (a) and (c)?' " *Corley v. United States*, 129 S. Ct. 1558, 1566 n.5 (2009) (citation and alteration omitted).

- "Petitioner's interpretation of [the statutory provision] might be plausible were we to interpret that provision in isolation, but it simply is not tenable in light of the [statute's] surrounding provisions. We must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 99 (1992) (plurality) (alteration and internal quotation marks omitted).

The panel's analysis defies that rule of construction by concluding that the meaning of subsection (i) is plain *without regard to the very next clause in the same sentence. See* Amended Op. at 11198 (concluding, *before* considering subsection (ii), that: "Thus, according to the plain meaning of the statutory language," subsection (i) encompasses tax revenue losses to the government). In subsection (i), Congress gave *general* treatment to losses while, in subsection (ii), Congress gave *specific* treatment to tax revenue losses. Without regard to any other analysis, both logic and Supreme Court precedent require us to conclude that the meaning of subsection (i) is *not* plain and to look to other indicators of congressional intent.[1]

---

[1]Logic and Supreme Court precedent are not the only support for that conclusion. In its opinion published at 593 F.3d 979 (9th Cir. 2010), the panel cited *Balogun v. U.S. Attorney General*, 425 F.3d 1356, 1361 (11th Cir. 2005), to support its conclusion that the meaning of subsection (i) is plain. *Kawashima*, 593 F.3d at 983. The problem is that the court in *Balogun* reached a contrary conclusion. In that case, the Eleventh Circuit addressed the interpretation of subsection (i) in circumstances where the application of subsection (i) was much more straight-forward. Yet, even in those circumstances, the Eleventh Circuit could not conclude that the meaning of subsection (i) is plain. *Balogun*, 425 F.3d at 1361. The panel's response to that fact was to delete its citation to *Balogun*. We can infer that the panel now finds the Eleventh Circuit's reasoning unpersuasive, but we do not know why.

The panel forcefully defends its conclusion that the meaning of subsection (i) is "plain" for the simple reason that each and every other indicator of congressional intent points to the opposite conclusion: Congress intended subsection (ii), and not subsection (i), to cover tax crimes.

### B.   *Superfluities Must be Avoided if Possible*

The panel's analysis next runs afoul of the rule that, if possible, we must read statutory text to avoid superfluities. "We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." *Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879); *see also Knight v. Comm'r*, 552 U.S. 181, 190 (2008) ("Thus, accepting [a particular] approach would render part of the statute entirely superfluous, something we are loath to do." (internal quotation marks omitted)); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)).

The panel's interpretation renders subsection (ii) superfluous. Subsection (i) encompasses convictions that "involve fraud or deceit" and that involve a loss exceeding $10,000. Subsection (ii) encompasses tax evasion convictions where the tax revenue loss exceeds $10,000. Importantly, because all tax evasion convictions necessarily involve fraud or deceit, *Spies v. United States*, 317 U.S. 492, 499 (1943), subsection (i) necessarily encompasses all convictions encompassed by subsection (ii). The panel's interpretation thus renders subsection (ii) meaningless.

At the same time, it is easy to interpret the statute to give meaning to both subsection (i) and subsection (ii). *Hoffman*, 101 U.S. at 115. It is an entirely reasonable interpretation that Congress intended subsection (ii), and not subsection (i), to

govern tax crimes.² Because it is "possible" to give "significance and effect" to all parts of the statutory text, we *must* do so. *Hoffman*, 101 U.S. at 115. "We are not at liberty to construe any statute so as to deny effect to any part of its language." *Id.*

The panel declines to apply this mandatory analysis solely because of its speculation that Congress might have intended to enact a superfluous statutory provision. The panel's reasoning misunderstands the rule against superfluities specifically and the task of statutory interpretation more generally. It is true that no method of statutory interpretation is absolute. Indeed, even when the text is indisputably plain, we sometimes hold that Congress intended something very different (for instance, when the drafters made a typographical mistake). *See, e.g.*, *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 886 n.5 (9th Cir. 2009). Here, Congress indeed may have intended to enact a superfluous provision. But there must be some reason to believe that this is the case. We are not at liberty to wave away an indicator of congressional intent simply because it is *conceivable* that Congress intended the opposite. It is always conceivable that Congress did not mean what it said, or intended to enact a superfluous provision, or intended to raise serious questions of constitutionality, and so on. The panel's observation that, here, that possibility is not beyond the conceivable does not advance the analysis.

On this point, it is extremely important that *all indicators of congressional intent* point in the same direction: Congress intended tax crimes to be governed only by subsection (ii), not subsection (i). The panel points to absolutely nothing that

²As the Third Circuit explained, Congress reasonably may have concluded that no tax crimes other than the most severe tax crime—tax evasion—should qualify as an aggravated felony, even if the less severe tax crimes happen to involve fraud or deceit. *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 224 (3d Cir. 2004).

suggests that Congress did not so intend, other than the alleged "plain meaning" of subsection (i) when read alone. Is there any legislative history supporting the panel's view? No. Is there any statutory history supporting the panel's view? No. Is there a statutory purpose that supports the panel's view, such as a rule that the definition should be construed against the alien? No; in fact, the *opposite* presumption applies, as the panel acknowledges. Amended Op. at 11199 n.6; *Kawashima*, 593 F.3d at 984 n.7. Are there other canons of construction that support the panel's view? No; in fact, applicable canons of construction support the *opposite* view, such as the rule that the "specific governs the general." *See Ki Se Lee*, 368 F.3d at 223-24 (explaining the application of this canon of construction). In sum, the panel's unassailable observation that the rule against superfluities is not foolproof gets the panel nowhere; there must be some indicator that, in these particular circumstances, Congress actually intended to enact a superfluous provision. Beyond its speculation, the panel points to none.

In this regard, it is notable that the panel makes a point of reminding the reader no less than four times that it is following then-Judge, now-Justice, Alito's dissenting view in *Ki Se Lee*. The panel subscribes to, and applies, then-Judge Alito's view that the superfluities rule can be cast aside on the unsupported speculation that Congress may have intended to enact a superfluous provision. Just last year, now-Justice Alito advanced that same general view in *Corley*, 129 S. Ct. 1558. Unable to convince a majority of his colleagues, Justice Alito expressed his views in dissent. *Id.* at 1572-73 (Alito, J., dissenting). The Supreme Court majority, however, roundly rejected this proposed mode of interpretation: "[T]he dissent's point that subsection (a) seems clear when read in isolation proves nothing, for 'the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.' When subsection (a) is read in context, there is no avoiding the question, 'What could Congress have been get-

ting at with both (a) and (c)?' " *Id.* at 1566 n.5 (citation and alteration omitted).

Whatever validity the panel's method of interpretation may have had in the past, the Supreme Court clearly rejected it just last year. The panel does not explain how its opinion is consistent with *Corley*.

## C. *The Panel's Method of Statutory Interpretation Will Lead to Absurd Results in Other Cases*

Imagine that 8 U.S.C. § 1101(a)(43)(M) defined an "aggravated felony" as "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) involves fraud or deceit in which the tax revenue loss to the Government exceeds $50,000." Would a conviction resulting in a tax revenue loss to the government of $30,000 qualify as an aggravated felony? Yes, according to the panel's analysis. Or, imagine instead that 8 U.S.C. § 1101(a)(43)(M) defined an "aggravated felony" as "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) involves fraud or deceit in which the tax revenue loss to the Government exceeds $10,000 and the conviction became final after 1999." Would a 1997 conviction resulting in a large tax revenue loss to the government qualify as an aggravated felony? Yes, according to the panel's analysis. Under the panel's analysis, the text of subsection (i) is plain, and we need not be concerned that such an interpretation would render subsection (ii) superfluous, because Congress might have meant to enact a superfluous provision. The panel's opinion provides no basis to distinguish between those hypothetical statutes and the statute as written.

## D. *Conclusion*

The panel reads one phrase of the statute in isolation, ignoring the very next phrase in the same sentence. The panel's interpretation of the statutory provision renders another statu-

tory provision superfluous. The panel's interpretation is inconsistent with other canons of construction, including the standard caveat that the specific governs over the general and the rule that an ambiguous statute should be construed in the alien's favor. The panel fails to explain how its method of interpretation is consistent with recent Supreme Court jurisprudence. When made aware that one of its cited cases actually supports a view contrary to its own, the panel simply deleted its citation of that case without explaining why it found that case unpersuasive. Finally, the panel's opinion will lead to absurd results in other cases. I regret this court's failure to rehear this case en banc.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether petitioners' convictions for subscribing to a false statement on a tax return and for aiding and assisting in the preparation of a false tax return qualify as "aggravated felonies" that subject them to removal under the relevant immigration laws.

This is our third published opinion in this case. In our first opinion, *Kawashima v. Gonzales*, 503 F.3d 997 (9th Cir. 2007), *withdrawn* 503 F.3d 1111 (9th Cir. 2008) ("*Kawashima I*"), we conducted a limited examination of the record of petitioners' convictions to answer such question. One day after our panel opinion was filed, our en banc court decided *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), which caused us to reconsider. We published a second opinion, *Kawashima v. Mukasey*, 530 F.3d 1111 (9th Cir. 2008), *withdrawn* 593 F.3d 979 (9th Cir. 2010) ("*Kawashima II*"), in which we answered the question by applying *Navarro-Lopez* to Kawashima's conviction in light of our circuit's existing caselaw construing the statute defining "aggravated felony."

After we published our second opinion, the government filed a petition for rehearing en banc. While the government's petition was pending before us, the Supreme Court granted certiorari in *Nijhawan v. Attorney General*, 523 F.3d 387 (3d Cir. 2008), *cert. granted*, 129 S. Ct. 988 (2009). Like the case before us, *Nijhawan* concerned whether a particular conviction for a financial offense constitutes an "aggravated felony" under relevant immigration laws. After the Court issued its opinion, *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), we ordered the parties to file supplemental briefs on *Nijhawan*'s impact on the case before us. In light of this recent guidance from the Court, we issue this hopefully final opinion in this litigation.

I

Akio Kawashima and Fusako Kawashima[1] are natives and citizens of Japan. The Kawashimas were admitted to the United States as lawful permanent residents on June 21, 1984.

In 1997, Mr. Kawashima pled guilty to subscribing to a false statement on a tax return, in violation of 26 U.S.C. § 7206(1). In his plea agreement, he stipulated that the "total actual tax loss" for the purpose of determining his offense level under the Sentencing Guidelines was $245,126. Mr. Kawashima further conceded that he could be ordered to pay the same amount in restitution. On the same date, Mrs. Kawashima pled guilty to aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). Her plea agreement was not included in the record before us.

On August 3, 2001, the Immigration and Naturalization Service[2] issued separate Notices to Appear to the Kawashimas

---

[1] We refer to Akio as "Mr. Kawashima" and Fusako as "Mrs. Kawashima." We refer to Akio and Fusako collectively as the "Kawashimas."

[2] On March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency under the U.S. Department of Justice and its functions were transferred to the Bureau of Immigration and Customs Enforcement within the newly-formed Department of Homeland Security. We refer to the INS and its successor as the "Service."

alleging that the couple was removable because their prior convictions constituted aggravated felonies under 8 U.S.C. § 1101(a)(43)(M)(i) ("subsection M(i)") (defining as an aggravated felony any offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"). *See id.* § 1227(a)(2)(A)(iii) (stating that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable").[3]

After holding a removal hearing, an Immigration Judge ("IJ") concluded that the Kawashimas' convictions were aggravated felonies under subsection M(i). Accordingly, the IJ found the Kawashimas removable, denied their motion to terminate the proceedings, and ordered that they be removed to Japan.

The Kawashimas appealed the decision, and the Board of Immigration Appeals ("BIA") remanded because the transcript containing the testimony of the hearing and the IJ's oral decision was defective. After further proceedings, the IJ again denied the Kawashimas' motion to terminate proceedings and ordered them removed to Japan. The BIA affirmed and adopted the IJ's decision.

The Kawashimas subsequently filed a motion to reopen seeking waiver of inadmissibility under the Immigration and Nationality Act ("INA") § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). The BIA denied the motion as untimely.

The Kawashimas timely filed separate petitions for review of the BIA's affirmance of the IJ's removal order and the BIA's denial of their motion to reopen. We consolidated the petitions for review pursuant to 8 U.S.C. § 1252(b)(6). We consider each in turn.

---

[3]The Notice to Appear also alleged that the Kawashimas were removable for having been convicted of aggravated felonies under § 1101(a)(43)(M)(ii), but that allegation is not before us here.

## II

### A

We are faced with the task of determining whether Mr. Kawashima's conviction for willfully making and subscribing to a false statement on a tax return, in violation of § 7206(1), and Mrs. Kawashima's conviction for aiding and assisting in the preparation of a false tax return, in violation of § 7206(2), constitute aggravated felonies. Section 1101(a)(43)(M) defines an "aggravated felony" to include "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i)-(ii).

As a threshold statutory interpretation matter, we must decide whether tax offenses other than those described in § 7201 qualify as aggravated felonies under subsection (M)(i).[4] In their supplemental brief to this court, the Kawashimas renew their argument, first raised in their opening brief, that subsection (M)(i)'s definition of "aggravated felony" does not include their convictions under § 7206(1) and (2). They reason that subsection (M)(ii)'s specific reference to § 7201 indicates Congress's intent to exclude all federal tax offenses from the definition of aggravated felonies under the more general subsection (M)(i). In our initial opinion in this case, we rejected this argument. *Kawashima v. Gonzales ("Kawashima I")*, 503 F.3d 997, 999-1001 (9th Cir. 2007). Our ultimate view of this issue remains unchanged.

---

[4]The Kawashimas' convictions do not constitute aggravated felonies under subsection (M)(ii) because that provision is limited to tax offenses in violation of § 7201. Mr. Kawashima was convicted under § 7206(1) and Mrs. Kawashima was convicted under § 7206(2). *See United States v. Roselli*, 366 F.3d 58, 62 n.5 (1st Cir. 2004).

**[1]** The plain text of subsection (M)(i) sets forth two requirements for an offense to qualify as an aggravated felony. First, the offense must "involve fraud or deceit." Second, the "loss to the victim or victims" must exceed $10,000. *Ferreira v. Ashcroft*, 390 F.3d 1091, 1096 (9th Cir. 2004). In our view, §§ 7206(1) and (2) necessarily "involve fraud or deceit" because the provisions require the government to prove either that the defendant "willfully" subscribed to a statement in a tax return he did not believe to be true, or that the defendant "willfully" aided and assisted in the making of a false or fraudulent return. Furthermore, given that "the government is a victim in all tax fraud cases," *United States v. Presbitero*, 569 F.3d 691, 707 (7th Cir. 2009), a tax loss in excess of $10,000 satisfies the second prong of subsection (M)(i). Thus, according to the plain meaning of the statutory language, convictions for violating §§ 7206(1) and (2) in which the tax loss to the government exceeds $10,000 constitute aggravated felonies under subsection (M)(i). *Aguelles-Olivares v. Mukasey*, 526 F.3d 171, 175 (5th Cir. 2008).

We recognize that a divided panel of the Third Circuit reached a contrary conclusion in *Ki Se Lee v. Ashcroft*, 368 F.3d 218 (3d Cir. 2004).[5] There, the court found that the presence of subsection (M)(ii) reflected Congress's intent to specify tax evasion as the only removable tax offense, and thereby exclude tax offenses from the scope of subsection (M)(i). Writing in dissent, however, then-Judge (now Justice) Alito concluded that the plain text of subsection (M)(i) did not preclude the inclusion of tax offenses within its definition of aggravated felonies. *Id.* at 226 (Alito, J., dissenting). We are persuaded by Judge Alito's interpretation of the statute.

The court in *Ki Se Lee* applied two interpretive canons in support of its reading. First, the court applied the canon that

---

[5]We note that since our decision in *Kawashima I*, the Fifth Circuit has explicitly joined us in rejecting the Third Circuit's approach. *Arguelles-Olivares*, 526 F.3d at 174.

prescribes that, whenever possible, a statute should be interpreted to avoid rendering other provisions superfluous. *Id.* at 223. In the court's view, reading subsection (M)(i) to include tax offenses would render subsection (M)(ii) superfluous because any of the tax evasion offenses described by § 7201 would fall within the scope of subsection (M)(i)'s "fraud or deceit" provision. *Id.* at 222-23. Second, the court applied the familiar canon that the "specific governs the general." *Id.* at 223. Noting that subsection (M)(i) is a general provision that covers "fraud and deceit" and subsection (M)(ii) is a narrower provision that only covers federal tax evasion, the court reasoned that this canon also supported its conclusion that tax evasion in violation of § 7201, as described in subsection (M)(ii), is the only removable tax offense. *Id.* at 224.[6]

While such canons are often valuable tools in interpreting a statute's text, applying the canons the Third Circuit identified does not lead us to conclude that subsection (M)(i)'s definition of aggravated felonies excludes tax fraud convictions. *See Ki Se Lee*, 368 F.3d at 226 (Alito, J., dissenting). First and foremost, the Third Circuit's interpretation of subsection (M)(i) fails to account for the text of subsection (M)(i), which categorizes an offense as an aggravated felony as long as it includes two elements, "fraud and deceit" and loss to the victim in excess of $10,000. No further limitations are imposed.

Further, the interpretation adopted by the court in *Ki Se Lee* imputes an intent to Congress that is not supported by the statute's text. As the dissent in *Ki Se Lee* noted, "[i]f Congress had not wanted subsection (M)(i) to apply to 'tax offenses,' Congress surely would have included some language in that

---

[6]The Kawashimas also argue that the canon that construes ambiguities in a deportation statute in favor of the alien supports their argument that subsection (M)(ii) precludes the inclusion of tax offenses in subsection (M)(ii). That canon, however, is inapplicable where, as in this case, the statutory language is clear. *See Cardoza-Fonseca v. INS*, 480 U.S. 421, 449 (1987).

provision to signal that intention. As adopted, however, subsection (M)(i) contains no such hint." *Id.*

Finally, there are many reasons why Congress might have included subsection (M)(ii) even though many, if not all, of the tax offenses it describes would fall within the scope of subsection (M)(i). As the dissent in *Ki Se Lee* emphasized, "[s]ubsection (M)(ii) may have been enacted simply to make certain—even at the risk of redundancy—that tax evasion qualifies as an aggravated felony." *Id.* Although we recognize that the avoidance of surplusage in statutory text is an important goal, Congress harbors other important goals as well when adopting legislation. Judge Alito's dissent suggested two examples. First, even if Congress could not think of a tax evasion offense under § 7201 that would not involve "fraud or deceit" and therefore be adequately covered by subsection (M)(i), Congress has often realized its inability to anticipate every possible type of case, and may have added subsection (M)(ii) just to ensure that no tax evasion case fell outside subsection (M)'s definition of an aggravated felony. *Id.* at 226. Alternatively, Congress might have wanted to ensure that no court would hold that tax evasion falls outside the definition of an aggravated felony simply because "fraud" and "deceit" are not specific elements of that offense. *Id.* at 226-27.

**[2]** We therefore respectfully decline to adopt the Third Circuit's interpretation of subsection (M)(i). We, like Judge Alito and the Fifth Circuit, conclude that tax offenses not covered by subsection (M)(ii)'s specific reference to § 7201 qualify as aggravated felonies under subsection (M)(i) where the loss exceeds $10,000.

B

Our next task is to determine whether the Kawashimas' convictions under §§ 7206(1) and (2) are aggravated felonies within subsection (M)(i)'s definition. In answering this question, we have the benefit of the Supreme Court's recent opin-

ion in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), which explained the analysis we must follow in answering this question. In *Nijhawan*, the Court considered the applicability of subsection (M)(i) to Manoj Nijhawan, an alien who was convicted for a variety of federal fraud offenses. *Id.* at 2298. None of the statutes under which Nijhawan was convicted required the government to prove the amount of his victims' loss to the jury. At sentencing, however, Nijhawan stipulated that the total loss to his victims exceeded $100 million. *Id.*

**[3]** Based on these convictions, the government sought to remove Nijhawan from the United States, arguing that his conviction for fraud and his stipulation at sentencing combined to demonstrate that his conviction constituted an aggravated felony under subsection (M)(i). The Court agreed with the government. In so doing, it added a new step to the familiar categorical/modified-categorical approaches first announced in *Taylor v. United States*, 495 U.S. 575 (1990). *Nijhawan*, 129 S. Ct. at 2298. Under this approach, we must first decide whether a requirement under a generic crime is an "element" of the generic crime instead of simply a description of the "particular circumstances" in which the offender committed the crime on a specific occasion. *Id.* at 2298. If the requirement is an "element," we apply the *Taylor* approach; if the requirement is "circumstance specific," we ensure that the BIA used "fundamentally fair procedures" to determine whether the offender's crime satisfies the description of the generic offense. *Id.* at 2302-03.

With these principles of analysis established, we consider Akio and Fusako's cases separately.

1

**[4]** The information, plea agreement, and admission in Mr. Kawashima's case establish that he was convicted of violating § 7206(1). That section has four elements: "(1) the defendant made and subscribed a return, statement, or other document

that was incorrect as to a material matter; (2) the return, statement, or other document subscribed by the defendant contained a written declaration that it was made under the penalties of perjury; (3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) *the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law*." *United States v. Boulware*, 384 F.3d 794, 810 (9th Cir. 2004) (emphasis added). Thus, Mr. Kawashima's conviction under § 7206(1) necessarily involved "fraud or deceit." *See Ki Se Lee*, 368 F.3d at 226 (Alito, J., dissenting) ("'Fraud' or 'deceit' is a necessary element of 26 U.S.C. § 7206(1) . . . .").

**[5]** Moreover, the BIA followed fundamentally fair procedures in finding that the offense for which Mr. Kawashima was convicted resulted in a loss to the government of more than $10,000. Specifically, Mr. Kawashima stipulated in the plea agreement that the "total actual tax loss" was $245,126. Given that in *Nijhawan*, the Supreme Court relied on such a stipulation to conclude that a petitioner's prior crime was an "aggravated felony" under subsection (M)(i), we cannot conclude that the BIA's reliance on such a stipulation in this case was improper.

Based on the evidence available to us in the administrative record, we conclude that clear and convincing evidence supports the BIA's determination that Mr. Kawashima's conviction under § 7206(1) constitutes an aggravated felony as described in subsection (M)(i) because it involved "fraud or deceit" and because his offense resulted in a loss to the government in excess of $10,000. Accordingly, we deny Mr. Kawashima's petition for review of the BIA's affirmance of the IJ's order.

2

**[6]** The record of conviction in Mrs. Kawashima's case establishes that she was convicted of aiding and assisting in the preparation of a false tax return, in violation of § 7206(2).[7] That section requires the government to prove the following: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that *the return was fraudulent or false as to a material matter*; and (3) *the act of the defendant was willful.*" *United States v. Salerno,* 902 F.2d 1429, 1432 (9th Cir. 1990) (emphasis added). Moreover, as we observed in *Salerno*, "[t]he Supreme Court has repeatedly held that in order to make out a 'willful violation' of section 7206(2) the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws." *Id.* Thus, a conviction under § 7206(2) necessarily "involves fraud or deceit" and therefore satisfies the first element of an aggravated felony as described in subsection (M)(i).

As to the second element, in *Kawashima I* we concluded that the record of conviction did not contain sufficient evidence to establish that Mrs. Kawashima's offense resulted in a loss to the government in excess of $10,000. 503 F.3d at 1003-04. That conclusion was predicated on our assumption that our analysis should proceed under *Taylor*'s modified categorical approach, and therefore the scope of our review was

---

[7]In their supplemental brief to this court, petitioners assert that Mrs. Kawashima's case is no longer before us because after our first opinion in this case granted Mrs. Kawashima's petition for review, the government did not file a petition for rehearing. We are unpersuaded by this argument. Although it is true that the government did not ask us to reconsider our resolution of Mrs. Kawashima's case, we are entitled to do so as we have not yet issued our mandate in this case. As such, our decision remains subject to modification, either at the request of a party or *sua sponte. See Finberg v. Sullivan*, 658 F.2d 93, 96 n.5 (3d Cir. 1980) (en banc). Thus, Mrs. Kawashima's case remains before us, and we are obligated to decide the merits of her petitions for review in light of *Nijhawan*.

limited to the types of documents described in *Shepard v. United States*, 544 U.S. 13, 20 (2005), and its progeny.

**[7]** That assumption, it turns out, was wrong. In *Nijhawan*, the petitioner argued that an immigration court deciding whether an aggravated felony meets subsection (M)(i)'s $10,000 threshold should look only to the "charging documents, jury instructions, and any special jury finding (if one has been requested). If there was a guilty plea (and no trial) the subsequent court should examine the written plea documents or the plea colloquy." 129 S. Ct. at 2302. The Court rejected this argument, stating that

> nothing in prior law that so limits the immigration court. . . . [T]he cases that developed the evidentiary list to which [Nijhawan] points[ ] developed that list for a very different purpose, namely that of determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction. For another, [Nijhawan's] proposal itself can prove impractical insofar as it requires obtaining from a jury a special verdict on a fact that . . . is not an element of the offense.
>
> Further, a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim "beyond a reasonable doubt."

*Id.* at 2303. Thus, the BIA is not limited to only those documents which a court applying the modified categorical approach may review.

Given this, the government argues that we should remand this case to the BIA so that the agency may determine, in the first instance, what additional types of evidence it may consider under this newly announced standard and so that the government may have the opportunity to introduce evidence

to meet this standard. We agree. In *I.N.S. v. Ventura*, the Supreme Court summarily reversed a Ninth Circuit decision refusing to remand a case to the BIA so that it could determine whether changed country conditions rendered an alien ineligible for asylum. 537 U.S. 13, 15 (2002) (per curiam). The Court held that the Ninth Circuit had erred in deciding the "changed circumstances" matter on its own, observing that "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Id.* at 15-17. Remand is required so that "[t]he agency can bring its expertise to bear on the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Id.* at 17; *see also Gonzales v. Thomas*, 547 U.S. 184 (2006) (per curiam).

Since *Ventura*, we have distinguished between circumstances in which remand is necessary to permit the BIA to apply its expertise in reconsidering evidence and circumstances in which remand is unnecessary because the BIA exercised its expertise before the case came before us. Thus, in *Fernandez-Ruiz v. Gonzales*, we refused to remand a case to the BIA so that it could determine whether the evidence present on an alien's record of conviction established that the conviction was a "crime of domestic violence" rendering him removable. 466 F.3d 1121, 1134-35 (9th Cir. 2006) (en banc). We distinguished *Ventura*, noting that it "undeniably involved an issue the BIA had not considered." *Id.* at 1133. By contrast, in *Fernandez-Ruiz*, the BIA *had* considered whether the petitioner's state conviction constituted a crime of domestic violence—it had simply conducted this inquiry under the categorical, rather than modified categorical, approach. *Id.* at 1134-35. We did not consider remanding the case for the government to supplement the record of the petitioner's conviction because the government did not ask that we do so. *Id.* at 1135.

**[8]** This case, however, is ripe for remand. Our remand does not ask the BIA to consider whether evidence currently on the record is sufficient to demonstrate that Mrs. Kawashima's conviction is an "aggravated felony." *Cf. Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007) (holding that we need not remand to the BIA so that it may apply the categorical approach). Instead, we remand to the BIA so that it may determine, in light of the Supreme Court's holding in *Nijhawan*, what types of evidence it may consider to determine the total loss suffered by the government as a result of Mrs. Kawashima's crime.

## III

Our final task is to determine whether the BIA erred in denying the Kawashimas' motion to reopen.[8]

## A

**[9]** Mr. Kawashima argues that his motion to the BIA was a special motion pursuant to 8 C.F.R. § 1003.44 to seek § 212(c) relief. Section 1003.44 "applies to certain aliens who formerly were lawful permanent residents, who are subject to

---

[8]The government contends that we lack jurisdiction over the Kawashimas' petition for review of the BIA's decision, citing 8 U.S.C. § 1252(a)(2)(c). That provision strips a court of jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" certain offenses, including an "aggravated offense." *See* 8 U.S.C. § 1252(a)(2)(c); *see also id.* § 1227(a)(2)(A)(iii). However, the government's argument ignores § 1252(a)(2)(D), which provides that, despite subsection (c), a court remains vested with the jurisdiction to review "constitutional claims or questions of law raised upon a petition for review."

As a threshold matter, the Kawashimas argue that the BIA applied the incorrect regulation when it determined that their motion was untimely. Whether the BIA applied the appropriate regulation is decidedly a "question of law" over which we retain jurisdiction. *See Florez-de Solis v. INS*, 796 F.2d 330, 333 (9th Cir. 1986) ("[Petitioner's] contention that the BIA applied an incorrect standard is a question of law reviewed *de novo*.").

an administratively final order of deportation or removal, and who are eligible to apply for relief under former section 212(c) of the Act and 8 CFR § 1212.3 with respect to convictions obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997." 8 C.F.R. § 1003.44(a). To obtain relief under this provision, an alien "must file a special motion to seek section 212(c) relief on or before April 26, 2005." *Id.* § 1003.44(h). Furthermore, the provision imposes strict procedural requirements. In particular, the alien's motion "*must* contain the notation '*special motion to seek section 212(c) relief.*' " *Id.* § 1003.44(f) (emphasis added).

Mr. Kawashima claims that the required notation appears on page nine of the Kawashimas' motion. However, this page fails to contain any of the necessary text. Instead, it simply quotes 8 C.F.R. § 1003.44(b), which states, among other things: "Generally, a special motion under this section to seek section 212(c) relief must establish that the alien . . . ." This language fails in all respects to comply with the strict requirements imposed by 8 C.F.R. § 1003.44(h) and was inadequate to place the BIA and the district counsel on notice that Mr. Kawashima intended to make a special motion to seek § 212(c) relief.

**[10]** Standing alone, Mr. Kawashima's failure to include the precise language required by § 1003.44(h) is a sufficient basis on which to reject his attempt to construe the Kawashimas' motion as one seeking § 212(c) relief. Even if it were not, however, the cover page and first page of the motion state no less than four times: "Motion to Reopen Proceedings and Stay Deportation Under *Magana-Pizano v. INS*."**⁹** A motion

---

**⁹**The motion contained no citation to *Magana-Pizano*, but Mr. Kawashima might have been referring to our opinion in *Magana-Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999). Although that opinion did discuss § 212(c) and the Antiterrorism and Effective Death Penalty Act in that opinion, it did not concern a motion to reopen. In any event, the motion's reference to *Magana-Pizano* does not comply with the requirements imposed by 8 C.F.R. § 1003.44(f).

styled in this manner cannot reasonably be spared by text hidden in a lengthy quote found on page nine of the brief.

**[11]** Section 1003.44 does not require mere notice, it imposes strict procedural requirements to qualify for relief, including the notation "special motion to seek section 212(c) relief." Accordingly, we conclude that the BIA did not err in applying the 90-day filing deadlines for general motions to reopen pursuant to 8 C.F.R. § 1003.2(c)(2) and in denying Mr. Kawashima's motion to reopen as untimely because it was filed almost eight months late.[10] Therefore, we deny Mr. Kawashima's petition for review of the BIA's denial of the motion to reopen.

B

Since we have granted Mrs. Kawashima's petition for review, we dismiss her petition for review of the BIA's denial of her motion to reopen as moot. *See Goldeshtein v. INS*, 8 F.3d 645, 646 n.1, 650 (9th Cir. 1993) (dismissing as moot petitioner's motion to reopen after concluding that the petitioner is not removable because he was not convicted of a predicate offense involving moral turpitude).

IV

For the foregoing reasons, the petition for review of the BIA's affirmance of the IJ's removal order is **DENIED** with respect to Akio Kawashima (04-74313) and **GRANTED and REMANDED** with respect to Fusako Kawashima (05-

---

[10]Pursuant to 8 C.F.R. § 1003.2(c)(2), a general motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later." The BIA's final adminsitrative decision upholding the IJ's order of removal was rendered on August 16, 2004. The Kawashimas filed their motion to reopen on April 26, 2005 (or April 27, 2005), more than eight months after the BIA's final decision.

74408). The petition to review the BIA's denial of the motion to reopen is **DENIED** with respect to Akio Kawashima (04-74313) and **DISMISSED as MOOT** with respect to Fusako Kawashima (05-74408).